Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermabuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONALD WALDEN JR, NATHAN ECHEVERRIA, AARON DICUS, BRENT EVERIST, TRAVIS ZUFELT, TIMOTHY RIDENOUR, and DANIEL TRACY on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE STATE OF NEVADA, *EX REL.* ITS NEVADA DEPARTMENT OF CORRECTIONS, and DOES 1-50,<br><br>        Defendant. | Case No.: 3:14-cv-00320-MMD-WGC<br><br>**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>1)  Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201, et. seq;<br><br>2)  Failure to Pay Overtime in Violation of 29 U.S.C. § 207;<br><br>3)  Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>4)  Failure to Pay Overtime in Violation of NRS 284.180; and<br><br>5)  Breach of Contract. |

COME NOW Plaintiffs DONALD WALDEN JR, NATHAN ECHEVERRIA, AARON DICUS, BRENT EVERIST, TRAVIS ZUFELT, TIMOTHY RIDENOUR, and DANIEL TRACY ("Plaintiffs") on behalf of themselves and all others similarly situated and allege the following:

All allegations in this Complaint are based upon information and belief except for those allegations that pertain to the Plaintiffs named herein and their counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the federal claims alleged herein pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) which states in relevant part "An action to recover [such liability] may be maintained against any employer (***including a public agency***) in any Federal or State court of competent jurisdiction...." (emphasis supplied). This Court has supplemental jurisdiction over the state law claims alleged herein as arising from the same transaction or occurrence, *i.e.*, the failure to pay for time it takes to perform certain working tasks mandated by the employer to be performed prior to the beginning of a shift and/or at the end of the shift, as more fully set forth hereinafter.   In addition, all employees, including public employees, have a private cause of action unpaid for minimum wages has pursuant to the Nevada Constitution Article 15 Section 16.

2.      Venue is proper in this Court because Defendant properly removed this action from the First Judicial District Court of The State of Nevada located in Carson City, Nevada, and venue is proper in this district when a Nevada state entity is at issue.  *See* NRS 41.013(2).

3.      The State of Nevada has waived its sovereign immunity from suit for the claims alleged herein.  *See* NRS 41.031.

## PARTIES

4.      Plaintiff DONALD WALDEN JR is a natural person who is and was a resident of the State of Nevada at all relevant times herein and was employed by Defendant as a non-exempt hourly correctional officer at the Southern Desert Correctional Center from on or about February 24, 2003 to on or about February 2013 when he retired.

5.      Plaintiff NATHAN ECHEVERRIA is a natural person who is and was a resident of the State of Nevada at all relevant times herein and has been employed by Defendant as a non-exempt hourly correctional officer at the Southern Desert Correctional Center from on or about May 1, 2006 to the present.

6.      Plaintiff AARON DICUS is a natural person who is and was a resident of the State of Nevada at all relevant times herein and has been employed by Defendant as a non-exempt

hourly correctional officer at the Southern Desert Correctional Center from on or about July 2007 to the present.

7.     Plaintiff BRENT EVERIST is a natural person who is and was a resident of the State of Nevada at all relevant times herein and has been employed by Defendant as a non-exempt hourly correctional officer at the High Desert State Prison from on or about May 1, 2006 to on or about January 2014.

8.     Plaintiff TRAVIS ZUFELT is a natural person who is and was a resident of the State of Nevada at all relevant times herein and has been employed by Defendant as a non-exempt hourly correctional officer at the Northern Nevada Correctional Center from on or about August 2009 to the present.

9.     Plaintiff TIMOTHY RIDENOUR is a natural person who is and was a resident of the State of Nevada at all relevant times herein and has been employed by Defendant as a non-exempt hourly correctional officer at the Southern Desert Correctional Center from on or about March 2007 to on or about April 2016.

10.     Plaintiff DANIEL TRACY is a natural person who is and was a resident of the State of Nevada at all relevant times herein and has been employed by Defendant as a non-exempt hourly correctional officer from on or about October 2000 to the present and has worked at High Desert State Prison, Women's Correctional Center, Southern Desert Correctional Center and Ely State Prison during his employment.

11.     Defendant STATE OF NEVADA, *EX. REL*. ITS DEPARTMENT OF CORRECTIONS (hereinafter collectively "Defendant" or "NDOC") is a public agency subject to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and is an employer entity under the Nevada Constitution, Nev. Const. Art. 15 § 16 (defining "employer" as any "entity that may employ individuals").

12.     The identity of DOES 1-50 is unknown at this time and this Complaint will be amended at such time when the identities are known to Plaintiffs.  Plaintiffs are informed and believe that each of Defendant sued herein as DOE is responsible in some manner for the acts,

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "NDOC" herein shall mean "Defendants and each of them."

## FACTUAL ALLEGATIONS

### Background Facts Regarding Defendant's Common Plans, Policies, and Practices of Failing to Compensate Correctional Officers for Compensable Time Worked

13.     Plaintiffs have been employed as correctional officers at various correctional facilities throughout the state of Nevada.  At all times relevant herein, the State of Nevada has operated 19 correctional facilities within the State of Nevada: two (2) transitional housing units, ten (10) conservation camps, and seven (7) correctional facilities (prisons). *See* NDOC Web site: http://doc.nv.gov/Facilities/Home/ (last visited March 2, 2016). A facilities map can be found at this same Web address. As will be set forth in more detail below, the relevant operational procedures for working employees "off the clock" apply to each of these facilities.

14.     Despite having been employed at different facilities, Plaintiffs experiences with regard to the claims alleged herein were similar, common, and typical of all other correctional officers employed by Defendant throughout the State during the relevant time period alleged herein.  Namely, Plaintiffs were hourly paid employees of Defendant.  By law and by agreement, Defendant is required to pay Plaintiffs, and all others similarly situated correctional officers, for all hours worked.  However, Plaintiffs were required to perform work activities before and after their regularly scheduled shifts for which they were not compensated.  Plaintiffs were required to work approximately a half hour per shift without compensation "off-the-clock" at the agreed upon hourly rate.  In almost all work weeks or 80-hour two-week alternative work period during the Plaintiffs' employment with Defendant, the additional time worked "off the clock" was in part or completely in excess of 40 hours a week or the 80 hours per two-week alternative variable work schedule and thus should have been compensated at an overtime rate of one and one half the employee's regular rate of pay, as more fully set forth hereinafter.

15.     At almost all times (except when taking paid time off or holidays) Plaintiffs were required to work and did work a 40 hour work week with an agreement in writing that all times worked in excess of 40 hours would be paid at one and one half their normal regular hourly  rate,

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

or, in the cases of an alternative variable work week schedule, were required to work and did work, 80 hours within a two week period and with an agreement in writing that all hours worked in excess of 80 hours in a two week period would be paid at one and one half their normal regular hourly rate.

16.     For all times relevant herein, Defendant maintained a system of time recording known as NEATS ("Nevada Employee Action and Timekeeping System").  Upon information and belief, NEATS records only the exceptions to the "scheduled" work hours worked by Plaintiffs and all members of the putative class, as well as any workweeks in which a plaintiff or class members worked less or more than the scheduled work times.  The "scheduled" work hours are always 40 hours a week, or 80 hours within a two-week period if the alternative variable period has been elected, except rare occasions where otherwise noted on the Defendant's normal records.  This system of recording time is sometimes referred to as exception time reporting, when only the hours worked the scheduled amount are recorded for later subtraction or overtime addition for payroll purposes from the scheduled 40 hours per week or 80 hours per two-week period.  If the employee worked not less than the "scheduled hours" in a pay period, the employer's business records kept in the normal course, would simply reflect that the employed worked his or her normal scheduled shift of 40 hours per workweek or 80 hours per two-week period of time (except the records do not reflect any off the clock time as stated herein).

17.     However, Defendant did not properly count or record the time it took to perform the work activities prior to the start and/or after the conclusion of the scheduled work times, a violation of the record keeping requirements of the FLSA, as more fully alleged herein, as well as a violation of the overtime provisions of the FLSA, and a breach of the variable alternative workweek agreement signed by Defendant and each Plaintiff and class member.

18.     As a matter of policy system wide, Plaintiffs were only compensated for their regularly scheduled shift times when they were at their work stations.  Notwithstanding that their compensation was only for their scheduled shift times when they were at their work stations, Plaintiffs, and all others similarly situated NDOC correctional officers, were required to perform

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

1   numerous work related activities prior to arriving at their work station and after leaving their work

2   station without any compensation at all.

3       19.    Upon arriving to the correctional facility and passing through security (which

4   Plaintiffs do not allege to be compensable time), Plaintiffs were required to report to the

5   supervisor or sergeant on duty to check in, receive their assignments for the day, pass a uniform

6   inspection, and collect any and all tools that would be needed for their daily assignment (e.g.,

7   radios, keys, weapons, tear gas, hand cuffs).  Indeed, this pre-shift requirement is specifically set

8   forth in the Nevada Department of Corrections' Administrative Regulations: "All correctional

9   staff will report to the shift supervisor/shift sergeant upon arrival to ensure their status if required

10  to work mandatory overtime."   *See* http://www.doc.nv.gov/sites/doc/files/pdf/AR326.pdf (last

11  visited Feb. 25, 2014).  Plaintiffs would then be required by the Defendant to proceed to their

12  designated work station, which, given the size of the correctional facilities involved, could take

13  up to 15-minutes or more per employee per shift.  Once they arrived at their designated work

14  station, Plaintiffs were required by the employer to be and were briefed by the outgoing

15  correctional officer.  Only after the employee had received instructions and/or briefing, would the

16  "scheduled" shift time begin.  Plaintiffs were not compensated for any of this these pre-shift

17  activities.

18      20.    By regulation, administrative operating procedure and in fact, Defendant required

19  Plaintiffs and every member of the class to perform these duties pre-shift and without

20  compensation each and every shift worked.  On average, Plaintiffs estimate that they, and every

21  member of putative class, performed upwards to 30-minutes of compensable work before their

22  regularly scheduled shifts, each and every shift worked, for which they were not paid.

23      21.    Similar to their pre-shift activities, Plaintiffs and class members were also

24  uniformly required to perform on a daily basis work activities without compensation after the end

25  of their regularly scheduled shift.  Plaintiffs would routinely have to stay past their scheduled shift

26  to conduct the mandatory de-briefing with the oncoming correctional officer and then they would

27  have to return to the main office to return the various tools they attained for the day.  Only upon

28

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

returning the tools, were they finally permitted to process through security (which Plaintiffs do not allege to be compensable time) and leave the facility.

22.     On average, Plaintiffs estimate that they performed upwards to 15 minutes of compensable work after their regularly scheduled shifts, each and every shift worked, for which they were not paid.  By regulation, administrative operating procedure and in fact, Defendant required Plaintiff and every member of the class to perform these duties post-shift and without compensation daily.

23.     Plaintiffs and plaintiff class members rely (and will rely at trial) on the records maintained by the Defendant to establish the base hours worked per workweek or two-week period of time.  Plaintiff and class members will then rely on just and reasonable inferences from a representative sampling of employees and expert research and opinions, such as the one attached hereto as Exhibit A, for exact calculation of the amount of time due to be compensated at either the regular rate (if there were additional hours worked before the employee worked his "scheduled" shifts) and at time and one half time the regular rate for all overtime hours worked.

24.     For the class for breach of contract under Rule 23 of the Federal Rules of Civil Procedure, the expert report identified above calculated the $9,487 per person amount of overtime exposure based on a sampling of 220 putative class members.  This figure is based on the random survey that conducted and includes actual rates of pay, dates of employment, and the amount of time spent performing pre- and post-shift work.  The individual named-Plaintiffs' working time and payrates are similar and set forth in more detail hereinafter.

25.     Upon Plaintiffs' own observations, beliefs, and understanding of the Nevada Department of Corrections' Administrative Regulations, all correctional officers in the state of Nevada were required to perform work off-the-clock.  Almost all of this off-the-clock work occurred in addition to a full 40 hour or 80 hour "scheduled" hours worked.  The basis for this conclusion is set forth in more detail below.

/ / /

/ / /

/ / /

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**<u>Specific Pre- and Post-Shift Activities That Were Required by Defendant and</u>**

**<u>Performed by Plaintiffs and Class Members</u>**

26.     Defendant's own regulations specify a list of work-related tasks that must be completed before the employee is considered to be at his or her scheduled post, ready for work and finally "on the clock" for purposes of Defendant's payroll compensation purposes.

27.     For example, NDOC Administrative Regulation 326 states, in relevant part, that "All correctional staff will report to the shift supervisor/shift sergeant upon arrival . . . ."

28.     The operational procedures at one of the prisons states as follows:

> 1.  All Staff shall report for duty fully prepared for any work assignment.
>     - Uniform and equipment shall be in accordance with A.R. 350.
> 2.  Staff will report to the shift supervisor in the muster room for posting of their assignment.
>     - Staff will report early enough to be on their post by the beginning of their shift.
>     - Staff will report in person.
>         o  Areas of assignment or working hours do no exempt the staff from reporting for duty to the Shift Supervisor.
> 3.  All Staff shall check their respective mailboxes prior to reporting for duty.

29.     In furtherance of these directives, high ranking supervisors enforce Defendant's policy of requiring Correctional Officers to be at their post by the start of their shift.   The following is an email excerpt sent to Correctional Officers by their Lieutenant:

> A few people need to be reminded.  You need to arrive on your post by the start of your shift (OP 032). It is approx. 10-15-minute walk from Operations to 9/12 quad.   You need to incorporate this walk in your travel to work to ensure you arrive on time.

30.     In addition to the written plan and policies of Defendant that mandate the performance of pre-shift work activities without compensation, the following work tasks must be performed by Plaintiffs and class members.

31.     The first work related task performed by Plaintiffs and all class members "off the clock" before their scheduled work time is called MUSTER, and is described in detail as follows:

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

a.      Prior to the beginning of a correctional officers' regularly scheduled shifts, each officer is required to report to the shift supervisor for "muster" (or "roll call") in order to receive assignments for the day, pass a uniform inspection, and receive pertinent information on the global status of the facility.  Correctional officers indicated that they had to partake in these pre-shift tasks every day.  Muster occurred after officers passed through security and metal detectors[1] but prior to the beginning of their regularly scheduled shift.  Each officer had to attend muster to receive his/her assignment and for the express purpose of finding out the specific post the officer was assigned to for that day.  Officers were required to report to their shift supervisor because correctional officers' assignments can change from day to day based on the needs of the institution and supervisors would not post officers to their shift without seeing them face-to-face).  Indeed, Wardens of the various facilities have confirmed in sworn deposition testimony that this was a requirement of correctional officers' positions.

b.      Another stated purpose of requiring Plaintiffs and all class member to report to Muster was for a uniform inspection by their shift supervisor.  Administrative Regulation ("AR") 350 specified the correct uniforms for officers.  In fact, officers could not proceed to their posts if they were not wearing the appropriate uniform, would be reprimanded (including being sent home) if their uniform was not up to standards, and had to remain in uniform until they fully exited the facility in case of an emergency or inmate situation.

c.      Another stated purpose of requiring Plaintiffs and all class members to report to muster was to also give correctional officers information related to any new developments at the facility or issues relating to officer's employment such as security issues, lockdown situations, changes in rules, and inmate problems among other pertinent information by their shift supervisor prior to reporting to their assigned post.

---

[1] Plaintiffs do *not* allege that the time it takes them to pass through the security check point/metal detectors is compensable work time.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

32.     In addition to attending Muster, whether in a group or at a common place to retrieve and review written instructions, the next work related task performed by plaintiffs and all class members "off the clock" before their scheduled work time was called GEAR COLLECTION, and is described in detail as follows:

a.      After the correctional officer has finished "muster" but prior to the beginning of his or her regularly scheduled shift, officers are required to pick up equipment and tools necessary and required to complete their daily job tasks, including but not limited to: keys, radios, weapons, mail, reports, restraints, and pepper spray. Correctional officers could not collect any tools and equipment needed for their post prior to being assigned by the shift supervisor and proceeding to their post for their regularly scheduled shift.

33.     The next work related task performed by Plaintiffs and all class members "off the clock" before their scheduled work time was called PASS DOWN and is described in detail as follows:

a.      In addition to receiving a briefing by their shift supervisor during the muster process, correctional officers would also receive a briefing from the officer they were relieving when they took over a post and prior to the beginning of their regularly scheduled shift.  Both of these briefings were necessary in order for the officer because the briefings are officers' "source of [] security system for the institution" facility-wide and post specific.

34.     Correctional officers were actually trained to show up early during their time at the academy in order to complete all of these pre-shift tasks.  And, if they showed up at the time their regularly scheduled shift started, their supervisors would reprimand them for not showing up early enough to complete these tasks so that they could assume their post at their regularly scheduled shift start time.  In Defendant's party admission Warden Williams confirmed in deposition under oath that officers would have to get in a half hour early "to clear and do everything" and that he had seen officers "come in ten minutes to the start of their shift. And I'm scratching my head, if he [shift supervisor] assigns them to a tower or something, how are they

going to get to their shift on time." *See* Exhibit B, attached hereto, Deposition Transcript of Warden Brian Williams, hereinafter "Williams Depo" at 133:17:22 and 134:12-17 and 136:2-4.

35.      Because of the time it took for Plaintiffs and all class members to collect gear after Muster, and the time it took to walk to their actual post assignments, correctional officers would get to Muster upwards to 30 minutes before their official shift start time in order to make sure they were present at their post prior the other officer's end of shift/ beginning of their shift to be briefed by that outgoing officer prior to the incoming officer's regularly scheduled shift start time, and in order to complete all these required work tasks, and to get the other officer out as near as possible to the end of his or her shift.

36.      In addition to these uncompensated pre-shift work activities, Defendant required plaintiff and all class members to engage in uncompensated POST SHIFT ACTIVITIES as follows:

a.      At the end of correctional officers' regularly scheduled shift, each officer, was required to provide a pass down of information to the officer who was relieving that post.  Plaintiffs and all class members could not do their jobs without these briefings and debriefings because the briefings contained "critical safety information."   In fact, Warden Williams specifically testified that communication and exchange of information between officers is "key in everything we do." Williams Depo at 121:14-17 and 122:20-21.

b.      In addition, just because the correctional officers had been relieved officially at the end of their shift, didn't mean Plaintiff and all other class members done working without compensation.  After being "officially relieved", plaintiff and all other class members had to return that same equipment and/or drop off/complete paperwork and they still had to adhere to all rules and regulations until they exited the gatehouse in case something happened on their way out.   For instance, one officer indicated that they were trained at the academy that they always must be ready to respond and that correctional officers "get paid for what they might have to do."

37.      Because of the time it took for Plaintiffs and all class members to debrief the incoming officer who was relieving them, return collected gear picked up at the beginning of their

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

1 shift, and complete paperwork correctional officers would spend approximately another 15

2 minutes or more after the end of their official shift end time.

3 **Defendant's Scheduling Policies, Contracts of Employment for the Payment of**

4 **Overtime, and Hours Worked Yet Unpaid for the Named-Plaintiff/Class**

5 **Representatives**

6 38.   Plaintiffs and class members were all scheduled for and worked overtime hours,

7 either over 40 hours per workweek and/or over 80 hours during the two-week work period.

8 39.   There is no need for guesswork for whether overtime is owed for Plaintiffs and

9 class members.   Indeed, all NDOC facilities adhere to set of uniform published policies and

10 regulations.   For example, Operational Procedure 320, which applies to all facilities and is

11 attached hereto as Exhibit C, defines overtime as follows:

12 Overtime-Hours worked in excess of 8 hours in one calendar day; 40 hours
13 in a week or an 80-hour variable work schedule within a biweekly pay
period.

14 40.   Administrative Regulation (AR) 320, also applicable to all facilities, attached

15 hereto as Exhibit D, states in relevant part:

16 Non-exempt employees, as specified in the State Classification and
17 Compensation Plan, shall earn overtime at the rate of time and one-half.

18 41.   The Nevada Department of Corrections Variable Work Schedule requests

19 constitutes an agreement to pay overtime rates after an employee works 40 hours in a week, or, if

20 the employee elects to work an 80-hour variable (innovative) work schedule, then to pay overtime

21 premium rates for all hours worked in excess of 80 in a two-week period. For all class members,

22 the form states:

23 For employees who choose and are approved for a variable workday, overtime
24 will be considered only after working 40 hours in one week.

25 42.   The agreement also states that Overtime will be paid under the Nevada Revised

26 Statute 284.180.   Overtime will be considered only after working 80 hours biweekly.   The

27 overtime rate for public employees specified in NRS 284.180 "must be earned at the rate of time

28 and one-half" their regular rate of pay.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

43.     Like every other member of the class, the hours worked can be determined by reference to the Defendant's exception time reporting records, the aforementioned NEATS, and by the addition of the times worked before and after each shift "off the clock" which were not recorded by Defendant.  The regular pay rate is reflected in the Defendant's pay grade records as the rate that the Defendant has agreed to pay for all hours worked (not including time and one half for overtime premium pay).  Like most public-sector agencies, Defendant has agreed to follow the federal OMB regulations, and to include holidays and sick days as hours actually worked, which are noted as exceptions on the NEATS form when applicable.  Like all class members, the named Plaintiffs were required to and did sign a "Nevada Department of Corrections Variable Work Schedule Request," an exemplar copy of which is attached hereto and marked as Exhibit E.

44.     Plaintiff **DONALD WALDEN** worked for NDOC as a Correctional Officer at the Southern Desert Correctional Center ("SDCC") from on or about February 24, 2003 to February 14, 2013.  His rate of pay was approximately $23.00 or $24.00 per hour as of the last he day worked.  During his ten-year career with NDOC Plaintiff Walden has worked a variety of different shifts and was assigned to a variety of different job posts.  For instance, he has held the following job posts and worked the following shifts dating back to 2011:

a.      In 2012 through separation of employment, he was the Senior Officer assigned to Search and Escort on swing shift, until he was hurt on the job in May, and agreed to work a 14-day variable work schedule of 80 hours during that work period. Plaintiff Walden routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

b.      In 2011, Plaintiff Walden was the Senior Officer for Unit 8 (lock down unit) on day shift and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

c.      Plaintiff Walden spent an average of 45 minutes or more pre- and post-shift performing required work activities, as described above, off the clock and without

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

compensation, each and every shift worked.  Thus, because Defendant required Plaintiff Walden to work at least 45 minutes of uncompensated work time each and every shift worked, at the required overtime rate of pay of one and one half time his regular rate of pay of approximately $35.25 ($23.50 X 1.5) for .75 hours of overtime, he is owed $26.44 for each shift worked, or $6,345.60 ($26.44 X 240 shifts per year) per year worked. As an example, Plaintiff Walden most recently worked his full schedule of 10 shifts for the pay period of January 7, 2013 through January 20, 2013 and was required to complete the pre- and post-shift work tasks described above, off the clock and without compensation.  In both workweeks, Plaintiff Walden worked 5 eight (8) hour shifts for a total of 40 hours per workweek. Because he was not compensated for these work activities, Plaintiff Walden worked 3.75 hours of overtime for each workweek and is owed $132.19 (3.75 X $35.25) for each of these workweeks.

45.     Plaintiff **NATHAN ECHEVERRIA** has worked for NDOC as a Correctional Officer at the Southern Desert Correctional Center ("SDCC") from on or about May 1, 2006 to the present.  Plaintiff Echeverria's rate of pay is approximately $23.50 per hour.  During his 11 years of employment by NDOC Plaintiff Echeverria has worked a variety of different shifts and was assigned to a variety of different job posts. For instance, he has held the following job posts and worked the following shifts dating back to 2011:

a.     In 2014, he was assigned to Unit 5 B and was scheduled to work a 14-day variable work schedule of 80 hours. During that work period, he routinely worked at least 80 hours a work period (not counting the hours he worked without pay as set forth below).

b.     In 2013, he was assigned to Visitation and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

c.     In 2012, he was assigned to Visitation and was scheduled to work a 14-day 80 hours a work period (not counting the hours he worked without pay as set forth below).

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

d.    In 2011, he was assigned to Unit 7 A and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

e.    Plaintiff Echeverria spent an average of 45 minutes or more pre- and post-shift performing required work activities, as described above, off the clock and without compensation, each and every shift worked.  Thus, because Defendant required Plaintiff Echeverria to work at least 45 minutes of uncompensated work time each and every shift worked, at the required overtime rate of pay of one and one half time his regular rate of pay of approximately $35.25 ($23.50 X 1.5) for .75 hours of overtime, he is owed $26.44 for each shift worked, or $6,345.60 ($26.44 X 240 shifts per year) per year worked.  As an example, Plaintiff Echeverria most recently worked his full schedule of 8 shifts for the pay period of September 30, 2013 through October 13, 2013 and was required to complete the pre- and post-shift work tasks described above, off the clock and without compensation.  In both workweeks, Plaintiff Echeverria worked 4 ten (10) hour shifts for a total of 40 hours per workweek. Because he was not compensated for these work activities, Plaintiff Echeverria worked 3.75 hours of overtime for each workweek and is owed $132.19 (3.75 X $35.25) for each of these workweeks.

46.    Plaintiff **AARON DICUS** has worked for NDOC as a Correctional Officer at the Southern Desert Correctional Center ("SDCC") from on or about July 2007 to on or about July 2014 and High Desert State Prison ("HDSP") from on or about July 2014 to the present.  Plaintiff Dicus' rate of pay is approximately $21.17 per hour.  During his ten-year career with NDOC, Plaintiff Dicus has worked a variety of different shifts and was assigned to a variety of different job posts.  For instance, he has held the following job posts and worked the following shifts dating back to 2011:

a.    Currently, he is assigned to Unit 5 A/B and is scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely works at least 80 hours a work period (not counting the hours he works without compensation).

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

b.      In 2016, he was assigned to Unit 6 C/D and Unit 1 A/B and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

c.      In 2015, he was assigned to Unit 6 A/B and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

d.      In July 2014, he was assigned to Unit 4 C/D at HDCC and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

e.      In 2014, from January to July he was assigned to Unit 1 and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

f.      In 2013, he was assigned to Unit 1 and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

g.      In 2012, he was assigned to Unit 2 and a Relief Post and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

h.      In 2011, he was deployed in Afghanistan.

f.      Plaintiff Dicus spends an average of 45 minutes or more pre- and post-shift performing required work activities, as described above, off the clock and without compensation, each and every shift worked. Thus, because Defendant requires Plaintiff Dicus to work at least 45 minutes of uncompensated work time each and every shift

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

worked, at the required overtime rate of pay of one and one half time his regular rate of pay of approximately $31.76 ($21.17 X 1.5) for .75 hours of overtime, he is owed $23.82 for each shift worked, or $5,716.80 ($23.82 X 240 shifts per year) per year worked. As an example, Plaintiff Dicus most recently worked his full schedule of 10 shifts for the pay period of January 16, 2017 through January 29, 2017 and was required to complete the pre- and post-shift work tasks described above, off the clock and without compensation. In both workweeks, Plaintiff Dicus worked 5 eight (8) hour shifts for a total of 40 hours per workweek. Because he was not compensated for these work activities, Plaintiff Dicus worked 3.75 hours of overtime for each workweek and is owed $119.10 (3.75 X $31.76) for each of these workweeks.

47.    Plaintiff **BRENT EVERIST** worked for NDOC as a as a Correctional Officer at the High Desert State Prison ("HDSP") from on or about May 1, 2006 to on or about December 2014. Plaintiff Everist's rate of pay was approximately $22.80 per hour.  During his almost 9- year career with NDOC Plaintiff Everist worked a variety of different shifts and was assigned to a variety of different job posts.  For instance, he has held the following job posts and worked the following shifts dating back to 2011:

a.    In 2014, he was assigned to Housing Unit 1 CD Control and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

b.    In 2013, he was assigned to Housing Unit 1 CD Control and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

c.    In 2012, he was assigned to Housing Unit 4 AB Floor and was scheduled to work a 14-day variable work schedule of 80 hours during that work period.  He routinely worked at least 80 hours a work period (not counting the hours he worked without pay as set forth below).

- 17 -
FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

d.       In 2011, he was assigned to Housing Unit 3 AB Control and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

e.       Plaintiff Everist spent an average of 45 minutes or more pre- and post-shift performing required work activities, as described above, off the clock and without compensation, each and every shift worked. Thus, because Defendant required Plaintiff Everist to work at least 45 minutes of uncompensated work time each and every shift worked, at the required overtime rate of pay of one and one half time his regular rate of pay of approximately $34.20 ($25.65 X 1.5) for .75 hours of overtime, he is owed $25.65 for each shift worked, or $6,156.00 ($25.65 X 240 shifts per year) per year worked. As an example, Plaintiff Everist most recently worked his full schedule of 10 shifts for the pay period of January 20, 2014 through February 2, 2014 and was required to complete the pre- and post-shift work tasks described above, off the clock and without compensation. In both workweeks, Plaintiff Everist worked 5 eight (8) hour shifts for a total of 40 hours per workweek. Because he was not compensated for these work activities, Plaintiff Everist worked 3.75 hours of overtime for each workweek and is owed $128.25 (3.75 X $34.20) for each of these workweeks.

48.       Plaintiff **TRAVIS ZUFELT** works for NDOC as a Correctional Officer at the Northern Nevada Correctional Center ("NNCC") from on or about January 2010 to the present. Plaintiff Zufelt's rate of pay is approximately $22.00 per hour. During his seven-year career with NDOC Plaintiff Zufelt has worked a variety of different shifts and was assigned to a variety of different job posts. For instance, he has held the following job posts and worked the following shifts dating back to 2011:

a.       Currently he is assigned to the Medical Transport Team and is scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely works at least 80 hours a work period (not counting the hours he works without compensation).

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

b.     In 2016, he was assigned to the Culinary and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

c.     In 2015, he was assigned to B-Team Days Central Control and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

d.     In 2014, he was assigned to B-Team Days Central Control and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

e.     In 2013, he was assigned to Unit 3 B-Team Nights and was scheduled to work a 14-day variable work schedule of 80 hours during that work period.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

f.     In 2012, he was assigned to Graveyard S&E and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

g.     In 2011, he was assigned to Graveyard 8 Hours Unit 7B and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

h.     Plaintiff Zufelt spends an average of 45 minutes or more pre- and post-shift performing required work activities. Thus, because Defendant required Plaintiff Zufelt to work at least 45 minutes of uncompensated work time for each shift worked, at the required overtime rate of pay of one and one half time his regular rate of pay of

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

approximately $33.00 ($22.00 X 1.5) for .75 hours of overtime, he is owed $24.75 for each shift worked, or $5,940.00 ($24.75 X 240 shifts per year) per year worked.  As an example, Plaintiff Zufelt most recently worked his full schedule of 10 shifts for the pay period of March 26, 2017 through April 9, 2017 and was required to complete the pre- and post-shift work tasks described above, off the clock and without compensation.  In both workweeks, Plaintiff Zufelt worked 5 eight (8) hour shifts for a total of 40 hours per workweek. Because he was not compensated for these work activities, Plaintiff Zufelt worked 3.75 hours of overtime for each workweek and is owed $123.75 (3.75 X $33.00) for each of these workweeks.

49.     Plaintiff **TIM REDENOUR** worked for NDOC as a Correctional Officer at the Southern Desert Correctional Center ("SDCC") from on or about March 2007 to on or about April 2016.  Plaintiff Ridenour's rate of pay as of the last day of his employment was approximately $24.00 per hour.  During his ten-year career with NDOC Plaintiff Ridenour has worked a variety of different shifts and was assigned to a variety of different job posts. For instance, he has held the following job posts and worked the following shifts dating back to 2011:

    a.      In 2016, he was assigned to Search and Escort B, days B Day Shift and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

    b.      In 2015, he was assigned to Search and Escort B, days B Day Shift and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

    c.      In 2014, he was assigned to Search and Escort B, days B shift, and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

- 20 -
FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

d.      In 2013, he was assigned to Search and Escort B, days B shift and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

e.      In 2012, he was assigned to Unit 2 A Officer, days B shift and then Search and Escort B, days B shift and was scheduled to work a 14-day variable work schedule of 80 hours during that work period.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

f.      In 2011, he was assigned to the swing shift and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

g.      Plaintiff Ridenour spent an average of 45 minutes or more pre- and post-shift performing required work activities, as described above, off the clock and without compensation, each and every shift worked.  Thus, because Defendant required Plaintiff Ridenour to work at least 45 minutes of uncompensated work time each and every shift worked, at the required overtime rate of pay of one and one half time his regular rate of pay of approximately $36.00 ($24.00 X 1.5) for .75 hours of overtime, he is owed $27.00 for each shift worked, or $6,480.00 ($27.00 X 240 shifts per year) per year worked. As an example, Plaintiff Ridenour most recently worked his full schedule of 7 shifts for the pay period of November 26, 2012 through December 9, 2012 and was required to complete the pre- and post-shift work tasks described above, off the clock and without compensation.  In both workweeks, Plaintiff Ridenour worked 6 twelve (12) hour shifts and 1 eight (8) hour shift for a total of 80 hours pay period. Because he was not compensated for these work activities, Plaintiff Ridenour worked 5.25 hours of overtime for the two-week work period and is owed $189.00 (3.75 X $36.00) in overtime for this pay period.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

50. Plaintiff **DANIEL TRACY** has worked for NDOC as a Correctional Officer at the Southern Desert Correctional Center ("SDCC") from on or about October 9th, 2000 to on or about December 2015, and Ely State Prison ("ESP") from on or about January 2016 to the present. Plaintiff Tracy's rate of pay is approximately $26.00 per hour. During his seventeen-year career with NDOC Plaintiff Tracy has worked a variety of different shifts and was assigned to a variety of different job posts. For instance, he has held the following job posts and worked the following shifts dating back to 2011:

a. Currently he is assigned to A Unit and is scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely works at least 80 hours a work period (not counting the hours he works without compensation).

b. In 2015, he was assigned as Gym Officer and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

c. In 2014, he was assigned as Gym Officer and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

d. In 2013, he was assigned as Gym Officer and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

e. In 2012, he was assigned to K Officer for part of the year and was scheduled to work a 14-day variable work schedule of 80 hours during that work period. He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation). He was also assigned as Lead Officer for Units One and Two for part of the year, and was scheduled to work a regular schedule of 5 days a week, 8 hours

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

f.      In 2011, he was assigned to the Women's Correctional Center and was scheduled to work a regular schedule of 5 days a week, 8 hours a day, 40 hours in a work week.  He routinely worked at least 80 hours a work period (not counting the hours he worked without compensation).

g.      Plaintiff Tracy spent an average of 45 minutes or more pre- and post-shift performing required work activities, as described above, off the clock and without compensation, each and every shift worked.  Thus, because Defendant required Plaintiff Tracy to work at least 45 minutes of uncompensated work time each and every shift worked, at the required overtime rate of pay of one and one half time his regular rate of pay of approximately $39.00 ($26.00 X 1.5) for .75 hours of overtime, he is owed $29.25 for each shift worked, or $7,020.00 ($29.25 X 240 shifts per year) per year worked. As an example, Plaintiff Tracy worked his full schedule of 10 shifts for the pay period of March 17, 2014 through March 30, 2014 and was required to complete the pre- and post-shift work tasks described above, off the clock and without compensation.  In both workweeks, Plaintiff Tracy worked 5 eight (8) hour shifts for a total of 40 hours per workweek. Because he was not compensated for these work activities, Plaintiff Tracy worked 3.75 hours of overtime for each workweek and is owed $146.25 (3.75 X $39.00) for each of these workweeks.

### COLLECTIVE AND CLASS ACTION ALLEGATIONS

51.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

52.     Plaintiffs bring this action on behalf of themselves and all other similarly situated and typical employees as both a collective action under the FLSA and a true class action under Nevada law.  There are opt-in plaintiffs for all facilities except Ely Conservation Camp and Northern Nevada Traditional Housing. In addition to having valid consent to sue forms filed from

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

correctional officers from all but one conservation camp and one transitional housing unit, Plaintiffs' Expert Survey included respondents from all 19 locations.[2]

53.     The statute of limitations under the FLSA is 3 years for willful violations.

54.     The statute of limitations for violation of a constitutional duty under Nevada law is 2 years.

55.     The statute of limitations for violation of a statutory obligation under Nevada law is 3 years.

56.     The statute of limitations for breach of a contract under Nevada law is 6 years.

57.     The FLSA and Nevada Classes are defined as follows: **All persons who were employed by Defendant as correctional officers at any time during the applicable statute of limitations time period.**

58.     With regard to the conditional certification mechanism under the FLSA, Plaintiffs are similarly situated to those that they already represent and those that they further seek to represent for the following reasons, among others:

A.      Defendant employed Plaintiffs as hourly employees who did not receive pay for all hours that Defendant suffered or permitted them to work, and did not receive overtime premium pay of one and one half their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek, or 80-hour variable workweek.  Plaintiffs and all opt-ins were scheduled for and did work either 40-hours per workweek or 80 hours for a two-week work period but were not compensated for the time spent performing the off the clock activities above.  The time spend performing these off the clock activities was in excess of the scheduled for, and worked, 40 hours per workweek and/or 80 hours per 2-week work period.

B.      Plaintiffs' situations are similar to those they seek to represent because Defendant failed to pay Plaintiffs and all other Class Members for all time they were required to work, including time spent performing off-the-clock activities, pursuant to a

---

[2] This action has already been conditionally certified.  *See* ECF No. 45. Five-hundred and forty-two (542) persons have opted-in to this action.  *See* ECF Nos. 9, 10, 12, 15, 16, 18, 19, 24, 34, 35, 37, 38, 40, 41, 43, 44, 46, 55, 59, 60, 61, 62, 63, 64, 65, 66, 67, 70, 71, 76, 77, 78, and 82.

uniform policy, plan and/or practice embodied in part in the applicable administrative regulations themselves.

C.    Common questions of fact and/or law exist whether the time spent by Plaintiffs and all other Class Members engaging in off-the-clock activities is compensable under federal law and whether Defendant failed to pay Plaintiffs and Class Members one and one half times their regular rate for all hours worked in excess of 40 hours a week or 80-hur variable workweek.

D.    Upon information and belief, Defendant employs, and has employed, in excess of 3,000 Class Members within the applicable statute of limitations.

E.    Plaintiffs have filed their consents to sue with the Court and 542 similarly situated persons have opted-in to this action.

F.    Defendant has known or should have known its policies alleged herein were unlawful and that they owe employees this money, and have willfully failed to pay their employees properly.   Indeed, paying employees for engaging in work related activities such as receiving assignments, picking up tools/gear, and passing down job related information are generally understood to be compensable activities and the failure to pay for such activities prior to and after the initiation of this action represents willful misconduct on part of the Defendant.  Defendant's actions or omissions giving rise to this complaint were thus not in good faith and/or were not based upon an informed, reasonable belief that Defendant's behavior was lawful.

59.    Pursuant to the decision of the Ninth Circuit Court of Appeals in *Busk v. Integrity Staffing Solutions, Inc*., 2013 U.S. App. LEXIS 7397 (9th Cir. Nev. Apr. 12, 2013), both opt-in collective or representative treatment of claims under the federal FLSA and FRCP Rule 23 Class treatment of pendant state law claims may be maintained in the same action. Therefore, FRCP Rule 23(b)(3) Class treatment for all non-FLSA claims alleged in this complaint is appropriate in this case for the following reasons:

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

A.   <u>The Class is Sufficiently Numerous</u>: Upon information and belief, Defendant employs, and has employed, in excess of 3,000 Class Members within the applicable statute of limitations.

B.   <u>Plaintiffs' Claims are Typical to Those of Fellow Class Members</u>: Each Class Member is and was subject to the same practices, plans, or policies as Plaintiffs— Defendant required Class Members to perform off-the-clock activities without compensation.

C.   <u>Common Questions of Law and Fact Exist</u>: Common questions of law and fact exist and predominate as to Plaintiffs and the Class, including, without limitation: Whether the time spent by Plaintiffs and Class Members engaging in off-the-clock activities is compensable under Nevada law.  Specifically, in addition to the allegations made above, all of the policies and procedures of NDOC facilities requiring work activities to pre- and post-shift are essentially the same.  Each facility requires Correctional Officers to report to their sergeant on-duty, pre-shift, for roll call, to have their uniforms checked, to get their assignment for the day, and collect any tools they may need to perform their assignment for that day (e.g., radio, tear gas, handcuffs).  After engaging in these pre-shift activities, correctional officers are then required to proceed to their assigned post to conduct a debriefing with the outgoing officer.  All of this time has been, and continues to be, non-compensable pursuant to NDOC's policies, procedures, rules and regulations.  At the end of the shift, correctional offices are supposed to engage in many of the same pre-shift activities, but in reverse order.

D.   <u>Plaintiffs are Adequate Representatives of the Class</u>: Plaintiffs will fairly and adequately represent the interests of the Class because Plaintiffs are members of the Class, they have issues of law and fact in common with all members of the Class, and they do not have interests that are antagonistic to Class members.

E.   <u>A Class Action is Superior/Common Claims Predominate</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impractical, and

common claims of whether Plaintiffs and Class Members are entitled to compensation for the work activities performed predominate over individual issues. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the expenses and burden of individualized litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

### **FIRST CAUSE OF ACTION**

Failure to Pay Wages in Violation of the FLSA, 29 U.S.C. § 201, *et seq.*

(On Behalf of Plaintiffs and the FLSA Class Against Defendant)

60. Plaintiffs reallege and incorporate by reference all the paragraphs above in this Complaint as though fully set forth herein.

61. Pursuant to the FLSA, 29 U.S.C. § 206, *et seq.*, Plaintiffs and Class Members are entitled to compensation at their regular rate of pay or minimum wage rate, whichever is higher, for all hours actually worked.

62. 29 U.S.C. §203(e)(1)(C) defines employee, for purposes of the FLSA, to include any individual employed by a State, political subdivision of a State, or an interstate governmental agency.

63. With certain exceptions not relevant here, the minimum wage provisions of Section 6 and the overtime provisions of Section 7 of the Fair Labor Standards is and was applicable to employees of governmental agencies including but not limited to correctional officers during the time period alleged herein. 29 U.S.C. § 206(b); PL 99–150 (S 1570), PL 99–150, November 13, 1985, 99 Stat 787; *see, e.g.*, *Adderly v. City of Atlanta, Ga.*, CIV.A. 1:08-CV-2111-, 2009 WL 1456575 (N.D. Ga. May 22, 2009).

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

64.     Once the work day has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's applicable rate of pay, whether scheduled or not.

65.     By engaging in the conduct explained above, Defendant paid Plaintiffs and Class Members $0 for working off-the-clock.

66.     By failing to compensate Plaintiffs and Class Members for the time spent engaging in off-the-clock activities identified above, Defendant failed to pay Plaintiffs and the Class Members for all hours worked.

67.     Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful an unfair.  The actions of Defendant were willful and deliberate and without good cause, from the relevant time period until the date of judgment after trial.  Indeed, Defendant has been on notice at least since the inception of this lawsuit in 2014 that they have not compensated Plaintiffs and Class Members for the time spent performing pre- and post-shift activities but have done nothing to correct their illegal behavior.

68.     Wherefore, Plaintiffs demand for themselves and for all others similarly situated, that Defendant pay Plaintiffs and all other members of the Class their minimum hourly wage rate or their regular rate of pay, whichever is greater, for all hours worked during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207

(On Behalf of Plaintiffs and the FLSA Class Against Defendant)

69.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

70.     29 U.S.C. Section 207(a)(1) provides as follows:  "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

71.     29 U.S.C. Section 207(k) provides as follows:

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of

(A) 216 hours, or

(B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

72.     Once the work day has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's applicable rate of pay, whether scheduled or not.

73.     By engaging in the conduct explained above, Defendant paid Plaintiffs and Class Members $0 for working off-the-clock.

74.     By failing to compensate Plaintiffs and Class Members either in cash payment or compensating time off at one and one half the hours worked for the time spent engaging in off-

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

the-clock activities identified above, Defendant failed to pay Plaintiffs and Class Members overtime for all hours worked in excess of forty (40) hours in a week in violation of 29 U.S.C. Section 207(a)(1) and/or in excess of the hours set forth in 29 U.S.C. Section 207(k).

75. Defendant has not satisfied this obligation to pay for all hours worked in excess of 40-hour per week and/or in excess of the hours set forth in 29 U.S.C. Section 207(k) at one and one half the employees regular rate by the payment of money nor by the grant of compensatory time off as provided in 29 U.S.C. §207(o).

76. As set forth above, the time spent performing the pre- and post-shift activities that are the subject of this action was performed after Plaintiffs and all other similarly situated individuals had worked at least 40 hours in a workweek and/or 80 hours in a 2-week work period. Therefore, the uncompensated activities in question were performed during overtime hours for which Plaintiffs and similarly situated class members were denied overtime compensation by Defendant as a result of its unlawful pay practices.

77. Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair. The actions complained of herein were willful and deliberate and without good cause, from the relevant time period until the date of judgment after trial. Indeed, Defendant has been on notice at least since the inception this lawsuit in 2014 that they have not compensated Plaintiffs and Class Members for the time spent performing pre- and post-shift activities but have nothing to correct their illegal behavior.

78. Wherefore, Plaintiffs demand for themselves and for all others similarly situated, that Defendant pay Plaintiffs and all members of the Class one and one half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week and/or in excess of the hours set forth in 29 U.S.C. Section 207(k) during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

**THIRD CAUSE OF ACTION**

Failure to Pay Minimum Wages in Violation of the Nevada Constitution

(On Behalf of Plaintiffs and the Nevada Class Against Defendant)

79. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

80. Article 15 Section 16 of the Nevada Constitution sets forth the requirements the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of this section may not be waived by agreement between an individual employee and an employer. ... An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

81. Article 15, Section 16 of the Constitution does not contain any statute of limitations. There is a written agreement of employment at will, and for an hourly rate of pay. Therefore, the relevant statute of limitations is contained in NRS 11.190(1) (recognizing that an obligation founded upon instrument carries a 6-year statute of limitations).

82. Once the work day has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's applicable rate of pay, whether scheduled or not.

83. By engaging in the conduct explained above, Defendant paid Plaintiffs and Class Members $0 for working off-the-clock.

84. By failing to compensate Plaintiffs and Class Members for the time spent engaging in "off-the-clock" work activities as described above identified above, Defendant failed to pay Plaintiffs and Class Members the Nevada Constitutional minimum wage for that uncompensated time in violation of the Nevada Constitution.

85.     Wherefore, Plaintiffs demand for themselves and for all Class Members payment by Defendant at their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all hours worked during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

## FOURTH CAUSE OF ACTION

Failure to Pay Overtime in Violation of NRS 284.180

(On Behalf of Plaintiffs and the Nevada Class Against Defendant)

86.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

87.     NRS 284.180 provides that employees such as Plaintiffs and members of the Class shall receive overtime pay for hours worked in excess of 40 hours in a workweek and/or 80 hours in a two-week period of time.

88.     Once the work day has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's applicable rate of pay, whether scheduled or not.

89.     By engaging in the conduct explained above, Defendant paid Plaintiffs and Class Members $0 for working off-the-clock.

90.     By failing to compensate Plaintiffs and Class Members for the time spent engaging in "off-the-clock" work activities as described above identified above, Defendant failed to pay Plaintiffs and Class Members overtime for all hours worked in excess of 40 hours per workweek and/or over 80 hours during the two-week work period.

91.     As set forth above, the time spent performing the pre- and post-shift activities that are the subject of this action was performed after Plaintiffs and all other similarly situated individuals had worked at least 40 hours in a workweek and/or 80 hours in a 2-week work period. Therefore, the uncompensated activities in question were performed during overtime hours for which Plaintiffs and similarly situated class members were denied overtime compensation by Defendant as a result of its unlawful pay practices.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thermanbuck.com www.thermanbuck.com

92.     Wherefore, Plaintiffs demand for themselves and for all others similarly situated, that Defendant pay Plaintiffs and all members of the Class one and one half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours a week and/or in excess of or 80 hours in a 2-week work period during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

## **FIFTH CAUSE OF ACTION**

Breach of Contract

(On Behalf of Plaintiffs and the Nevada Class Against Defendant)

93.     Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

94.     At all times relevant herein, Defendant had an agreement with Plaintiffs and with every Class Member to pay an agreed upon hourly wage rate for all hours they worked for Defendant.  Defendant offered to pay Plaintiffs and Class Members a specific rate of pay per unit of time (hour) in exchange for Plaintiffs and Class Members' promise to perform work for Defendant at that hourly rate for all hours worked.  The parties had an agreement, expressed or implied, to pay this hourly rate of pay for all hours worked.

95.     Indeed, as described above, Defendant had an agreement with Plaintiffs and with every Class Member under the Nevada Department of Corrections Variable Work Schedule to pay overtime for all hours worked over 40 hours in a workweek or, if employee decided to accept the 14-day work period, to pay overtime for all hours worked over 80 hours in a 14-day work period.

96.     The parties' employment agreement necessarily incorporated all applicable provisions of both state and federal law, including especially the labor laws of the State of Nevada.

97.     Defendant beached their agreement with Plaintiffs and Class Members by failing to compensate them for all hours worked, namely the hours spent performing work activities off-the-clock, at the agreed upon rate of pay, including overtime when they worked over 40 hours in a workweek and/or over 80 hours in a two-week work period.

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

98.     As a result of Defendant's breach, Plaintiffs and Class Members have suffered economic loss that includes lost wages and interest.

99.     Wherefore, Plaintiffs demand for themselves and for Class Members that Defendant pay Plaintiffs and Class Members their agreed upon rate of pay for all hours worked off the clock during the relevant time period alleged herein together with attorneys' fees, costs, and interest as provided by law.

## PRAYER FOR RELIEF

Wherefore Plaintiffs, by themselves and on behalf of all Class Members, pray for relief as follows relating to their collective and class action allegations:

1.     For an order conditionally certifying this action under the FLSA and providing notice to all members of the Class so they may participate in this lawsuit;

2.     For an order certifying this action as a traditional class action under Nevada Rule of Civil Procedure Rule 23 for all other claims presented in this complaint;

3.     For an order appointing Plaintiffs as the Representatives of the Class and their counsel as Class Counsel;

4.     For damages according to proof for regular rate pay under federal laws for all hours worked;

5.     For damages according to proof for minimum rate pay under federal law for all hours worked;

6.     For damages according to proof for overtime compensation under federal law for all hours worked over 40 per week and/or in excess of the hours set forth in 29 U.S.C. § 207(k);

7.     For liquidated damages pursuant to 29 U.S.C. § 216(b);

8.     For damages according to proof for minimum wage rate pay under the Nevada Constitution for all hours worked;

9.     For damages according to proof for overtime compensation under Nevada law for all hours worked over 40 per week and/or in excess of 80 hours for the two-week time period;

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

10. For damages pursuant to Defendant's breach of contract;

11. For interest as provided by law at the maximum legal rate;

12. For reasonable attorneys' fees authorized by statute;

13. For costs of suit incurred herein;

14. For pre-judgment and post-judgment interest, as provided by law, and

15. For such other and further relief as the Court may deem just and proper.

DATED: April 19, 2017

/s/Mark R. Thierman
Mark R. Thierman
Joshua D. Buck
Leah L. Jones

Attorneys for Plaintiffs

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

## Index of Exhibits

A.  Employment Research Corporation Expert Report Dated November 23, 2015

B.  Excerpts from Deposition of Brian Williams

C.  Operating Procedure 320

D.  Administrative Regulation 320

E.  Variable Work Schedule Request

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com