UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DONALD WALDEN JR., *et al.*, <br><br> Plaintiffs, <br> v. <br><br> STATE OF NEVADA, *ex rel.* NEVADA DEPARTMENT OF CORRECTIONS, and DOES 1-50, <br><br> Defendants. | Case No. 3:14-cv-00320-MMD-WGC <br><br> ORDER |

**I.    SUMMARY**

This action concerns alleged failures to compensate Nevada Department of Corrections ("NDOC") employees under federal and state law. This Order addresses two motions that are currently pending before the Court: (1) Defendant State of Nevada *ex rel.* NDOC's Motion to Strike Plaintiffs' Third, Fourth, and Fifth Causes of Action in the First Amended Complaint ("Motion to Strike") (ECF No. 98); and, (2) Defendant's Motion to Dismiss Plaintiffs' First Amended Collective and Class Action Complaint ("Motion to Dismiss") (ECF No. 99). Plaintiffs filed responses to both motions (ECF Nos. 104, 105) and Defendant replied (ECF Nos. 111, 112).

For the reasons discussed herein, the Motion to Strike is denied and the Motion to Dismiss is granted in part and denied in part.

**II.    JURISDICTION**

The Court issued an order on March 1, 2018, asking the parties to file supplemental briefs to address whether the State of Nevada has waived its sovereign

immunity as to the Fair Labor Standards Act ("FLSA") claims in this action.[1] (ECF No. 147.) After reviewing the supplemental briefs (ECF Nos. 149, 158), the Court is convinced that Nevada has waived its sovereign immunity in this Court. The Supreme Court has held that a state's removal of suit to federal court constitutes a waiver of its Eleventh Amendment immunity. *Lapides v. Bd. Of Regents of Univ. Sys. Of Georgia*, 535 U.S. 613, 616 (2002). Here, the State of Nevada removed this action from state court. Therefore, it has waived its sovereign immunity.

## III. BACKGROUND

### A. Relevant Procedural History

This action was initiated May 12, 2014, in the First Judicial District Court of the State of Nevada in and for Carson City. (ECF No. 1 at 7-21 (Exh. A).) It was timely removed on June 17, 2014, on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (ECF No. 1 at 2.) The Court granted conditional certification of the class in March 2015. (ECF No. 45.) On April 13, 2016, Defendant filed a motion for judgment on the pleadings (ECF No. 86), which this Court granted in part on March 20, 2017. (ECF No. 94.) In that order, the Court dismissed the FLSA claims with leave to amend and correct the deficiencies with those claims as identified in light of the Ninth Circuit's recent decision in *Landers v. Quality Commc'n, Inc.*, 771 F.3d 638 (9th Cir. 2014), *as amended* (Jan. 26, 2015), *cert. denied*, 135 S. Ct. 1845 (2015). (ECF No. 94 at 4-5.) In *Landers*, the court stated that "at a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess," and may estimate "the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." 771 F.3d at 645. The Court did not address Defendant's arguments concerning Plaintiff's state law claims in light of the

---

[1]This Court has federal question jurisdiction over those claims and therefore is able to exercise supplemental jurisdiction over the three remaining state law claims.

fact that it no longer had jurisdiction to consider those claims once the FLSA claims were dismissed, and so the Court dismissed the state law claims without prejudice. (*Id.* at 5.) Plaintiffs filed their First Amended Complaint ("FAC") on April 19, 2017. (ECF No. 95)

### B. Relevant Facts

The following facts are taken from the FAC (ECF No. 95) unless otherwise indicated.

Plaintiffs are individuals who were or are employed with NDOC as non-exempt hourly correctional officers. Plaintiffs are or have been employed at various NDOC facilities including Southern Desert Correctional Center ("SDCC"), High Desert State Prison ("HDSP"), Northern Nevada Correctional Center ("NNCC"), Ely State Prison ("ESP"), and Women's Correctional Center ("WCC"). For all relevant times, NDOC maintained a time recording system for employees referred to as NEATS, which recorded only exceptions to scheduled work hours as well as any workweeks in which a plaintiff or class member worked less or more than the scheduled work times. (ECF No. 95 at ¶ 16.)

Generally, Plaintiffs were required to and did work a forty-hour workweek. If Plaintiffs worked "an alternative variable workweek schedule," they were required to work and did work eighty hours in a two-week period. (ECF No. 95 at ¶ 15.) As a matter of policy, Plaintiffs were only compensated for regularly scheduled shift times *at their work stations*. However, Plaintiffs were required to perform tasks before and after their shifts (commonly referred to as "preliminary" and "postliminary" activities). They claim that they were not compensated for these activities. As for preliminary activities, Plaintiffs identify the following activities: (1) reporting to the supervisor or sergeant on duty to check in; (2) receiving assignments for the day; (3) having their uniforms inspected; (4) collecting any and all tools needed for daily assignments, such as radios, keys, weapons, tear gas, handcuffs; (5) proceeding to their designated work stations; and (6) receiving debriefing from the outgoing correctional officer. Plaintiffs refer to the

first four activities as "muster." (ECF No. 95 at ¶ 31.) Plaintiffs contend that traveling to their designated work stations could take up to fifteen minutes or more per employee per shift. Plaintiffs also state that only after receiving briefing/instructions from the prior correctional officer at their work stations did a plaintiff's scheduled shift time begins. As to postliminary activities, Plaintiffs were required to conduct mandatory debriefing with the oncoming correctional officer then return to the main office to return various tools they had attained for the day and drop off or complete paperwork.

Plaintiffs estimate that on average they performed "upwards to 30-minutes of compensable work before their regularly scheduled shifts, each and every shift worked, for which they were not paid" and "upwards to 15 minutes of compensable work after their regularly scheduled shifts, each and every shift worked, for which they were not paid." (ECF No. 95 at ¶¶ 20, 22.) The FAC identifies at least one workweek where each Plaintiff worked over forty hours in a workweek or over eighty hours in a work period and were not paid overtime for pre- and post-shift activities. Specifically:

- Walden alleges he worked 3.75 hours of overtime at an average hourly rate of $23.50 and is owed $132.19 for each workweek during the pay period between January 7 through January 20, 2013;

- Echeverria alleges he worked 3.75 hours of overtime at an average hourly rate of $23.50 and is owed $132.19 for each workweek during the pay period between September 30 and October 13, 2013;

- Dicus alleges he worked 3.75 hours of overtime at an average hourly rate of $21.17 and is owed $119.110 for each workweek during the pay period between January 16 and January 29, 2017;

- Everist alleges he worked 3.75 hours of overtime at an average hourly rate of $22.80 and is owed $128.25[2] for each workweek during the pay period between January 20 and February 2, 2014;

- Zufelt alleges he worked 3.75 hours of overtime at an average hourly rate of $22.00 and is owed $123.75 for each workweek during the pay period between March 26 and April 9, 2017;

///

---

[2]This number appear to be based on an average hourly rate of $25.65. (ECF No. 95 at ¶ 47(e).) It is unclear whether the actual average hourly rate of pay for Everist was $22.80 or $25.65.

4

- Redenour alleges he worked 5.25 hours of overtime at an average hourly rate of $24.00 and is owed $189 for the pay period between November 26 and December 9, 2012; and,

- Tracy alleges he worked 3.75 hours of overtime at an average hourly rate of $26.00 and is owed $146.25 for each workweek during the pay period between March 17 through March 30, 2014.

(ECF No. 95 at ¶¶ 44(c), 45(e), 46(f),[3] 47(e), 48(h), 49(g), 50(g).) Each Plaintiff also identifies how much they believe they are owed in overtime per year worked. Specifically:

- Walden alleges he is owed $6,345.60 per year worked based on .75 hours of overtime per shift and 240 shifts per year;

- Echeverria alleges he is owed $6,345.60 per year worked based on .75 hours of overtime per shift and 240 shifts per year;

- Dicus alleges he is owed $ 5,716.80 per year worked based on .75 hours of overtime per shift and 240 shifts per year;

- Everist alleges he is owed $6,156.00 per year worked based on .75 hours of overtime per shift and 240 shifts per year;

- Zufelt alleges he is owed $5,940.00 per year worked based on .75 hours of overtime per shift and 240 shifts per year;

- Redenour alleges he is owed $6,480.00 per year worked based on .75 hours of overtime per shift and 240 shifts per year; and,

- Tracy alleges he is owed $7,020.00 per year worked based on .75 hours of overtime per shift and 240 shifts per year.

(ECF No. 95 at ¶¶ 44(c), 45(e), 46(f), 47(e), 48(h), 49(g), 50(g).)

The FAC contains five claims for relief: (1) failure to pay wages in violation of FLSA; (2) failure to pay overtime wages in violation of FLSA; (3) failure to pay wages in violation of the Nevada Constitution's Minimum Wage Amendment ("MWA"); (4) failure to pay overtime wages in violation of NRS § 284.180; and (5) breach of contract.

**IV.  MOTION TO STRIKE (ECF No. 98)**

Defendant moves to strike the FAC's state law claims pursuant to Fed. R. Civ. P. 12(f) because the claims are "redundant, immaterial, and impertinent" and because

---
[3]There are two paragraphs labelled "46(f)" in the FAC.

1  Plaintiffs "provide no basis for ignoring the Court's prior order." (ECF No. 98 at 4.) Plaintiffs respond that the "Court's prior order did not dismiss Plaintiffs' state law claims with prejudice so there is no issue with re-pleading those claims" and that the arguments in the Motion to Strike are redundant based on Defendant's Motion to Dismiss. (ECF No. 104 at 1, 3.) The Court agrees with Plaintiffs.

Under Rule 12(f), the Court may "strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While the Court may strike redundant, immaterial, or impertinent matters in a pleading, it cannot strike a claim for relief. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . . , we would be creating redundancies within the Federal Rules of Civil Procedure[] because a Rule 12(b)(6) motion . . . already serves such a purpose.") Thus, generally Rule 12(f) is the improper vehicle for dismissing or removing certain claims from a complaint.

Moreover, Defendant's contention that Plaintiffs did not comply with the Court's prior order is unavailing. In its prior order, the Court specifically dismissed the two state law claims without prejudice because it no longer had jurisdiction to consider Defendant's arguments relating to these claims once the Court dismissed the federal law claims. (*See* ECF No. 94 at 5.) Thus, Plaintiffs were not barred from reasserting their state law claims or asserting new ones, and nothing in the Court's prior order supports Defendant's reading that Plaintiffs were barred from doing so.

The Motion to Strike is therefore denied.

**V.   MOTION TO DISMISS (ECF No. 99)**

Defendant makes five arguments in support of dismissing the FAC: (1) accepting Plaintiffs' allegations as true, each earned more than $7.25 per hour and therefore the FAC fails to state a violation of the FLSA's minimum wage requirement; (2) Plaintiffs failed to plead any facts to establish a nexus between assertions that they were uncompensated for 45 minutes of pre- and post-shift activities, especially in light of the

1  uniqueness of their jobs, the different size of the NDOC facilities, and the different tools each had to use for their positions; (3) the MWA does not apply to government employees; (4) Plaintiffs' NRS § 284.180 claim lacks merit because Plaintiffs failed to exhaust their administrative remedies prior to filing suit; and (5) Plaintiffs' breach of contract claim should be dismissed because Plaintiffs' employment with NDOC is statutory, not contractual, and no actual contract is identified as having been breached. (ECF No. 99 at 2.)

### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not

permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

The Court takes judicial notice of the NDOC Variable Work Schedule Request form. (ECF No. 95-5). The document is incorporated by reference in the FAC and attached to it, and there is no dispute about its authenticity. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (considering documents outside the pleadings on a motion to dismiss "where the complaint necessarily relies upon [the] document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance").

**B.    Straight Time Claim**

In responding to Defendant's contention that the FAC fails to state a violation of the FLSA's minimum wage requirement, Plaintiffs point out that their first claim is not a minimum wage claim; rather, it is a straight time claim. (ECF No. 105 a 17.) Defendant does not address whether a "straight time" claim should be dismissed in its reply and instead states that "Plaintiffs are improperly seeking to amend their complaint via their opposition," as the Court's prior order granting leave to amend did not include language permitting a new "straight time claim." (ECF No. 112 at 4.) However, in light of Plaintiffs' clarification that they are asserting a failure to pay wages claim, the Court will permit the

///

///

///

8

claim to proceed.[4] Defendant's Motion to Dismiss is therefore denied as to Plaintiffs' first claim.

### C. Overtime Claim

As to the overtime claim, Defendant makes two independent arguments: first, the FAC's allegations regarding Defendant's failure to pay overtime does not meet the specificity requirements of *Landers*; and second, the facts as alleged are insufficient to demonstrate that the pre- and post-shift tasks are compensable under the FLSA. (ECF No. 99 at 9-15.) The Court disagrees and finds that this claim should proceed.

#### 1. *Landers*

In *Landers*, the Ninth Circuit stated that "at a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week," and that a "plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Landers*, 771 F.3d at 645. Defendant states that "not one individual plaintiff [in this action] pled any facts to satisfy *Landers*," yet goes on to argue about the plausibility of the factual allegations in the FAC. For example, Defendant states that "plaintiffs unjustifiably ask this Court to assume it takes the same amount of time for each person to . . . pick up their tools[] and report to their post . . . regardless of profession, facility, location or other factors." (ECF No. 99 at 10.) However, at the motion to dismiss stage, the Court is required to accept all well-pled factual allegations as true. Thus, to the extent any of those factual allegations appear to lack plausibility, Defendants are asking this Court to look beyond

///

---

[4]To the extent the parties argue about whether this failure to pay wages claim encompasses a gap time claim (*see* ECF No. 105 at 18-20; *see also* ECF No. 112 at 8-9), this requires the Court to assess the actual evidence in this case, which it will not do at the motion to dismiss stage.

the pleadings,[5] which it will not do at this stage.[6] Plaintiffs remedied the previous deficiencies in their complaint by identifying the applicable time period, identifying a given workweek with the hours above forty hours for which each Plaintiff was not compensated, and the amount each Plaintiff believes they are owed in overtime wages for each year worked. This is sufficient to satisfy *Landers*.

The Motion to Dismiss is therefore denied as to Plaintiff's claim for failure to pay wages in violation of the FLSA.

### 2. Pre- and Post-Shift Activities as Compensable Work

"It is axiomatic, under the FLSA, that employers must pay employees for all hours worked." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), *aff'd on other grounds sub nom. IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) (citations and internal quotation marks omitted). The Ninth Circuit requires a "three-stage inquiry" to determine if certain activities are compensable under the FLSA. *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010). First, the activity must be considered "work"; second, the activity must be "integral and indispensable" to the principal work performed; and, third, the activity must not be *de minimus*. *Id.* (citing to *Alvarez*, 339 F.3d at 902-03). The Portal-to-Portal Act "narrowed the coverage of the FLSA slightly by excepting two

---

[5]In fact, Defendant attached various exhibits to its motion to dismiss in support of its contention that the alleged facts are not accurate or plausible. The Court need not consider these exhibits at the dismissal stage unless it is able to take judicial notice of them.

[6]Therefore, despite the fact that two of the exhibits attached to the FAC deal with specific prisons (ECF Nos. 95-3, 95-4), the FAC appears to use them as examples or as support in an attempt to buttress the factual allegations in the FAC. For instance, Operational Procedure 320, which applies to SDCC, appears to be used as an example (ECF No. 95 at ¶ 39), while the testimony of Warden Williams appears to have been used to support the contention that, in order to complete preliminary tasks, correctional officers would need more than ten minutes if not thirty minutes to do so (*id.* at ¶ 34). Defendant takes issue with the use of Williams' testimony as a misrepresentation in the FAC since he was the warden of SDCC only (*see* ECF No. 99 at 6); however, the Court does not assume the veracity of Williams' statements or assume their applicability to all class representatives in this case. Moreover, Williams' own observation does not establish that these activities were required; rather, the FAC's mere contention that these activities were required by NDOC and must be completed before the start of Plaintiffs' shifts (see, e.g., ECF No. 95 at ¶¶ 14, 18) is a factual allegation the Court must assume to be true for purposes of ruling on Defendant's Motion to Dismiss.

10

activities that had been treated as compensable under [prior Supreme Court] cases: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." *IBP*, 546 U.S. at 27. However, the Supreme Court has held that a preliminary or postliminary activity is compensable if it is integral and indispensable to an employee's principal activities, meaning "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sol., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014).

Defendant first argues that the FAC's allegations fail to show that Plaintiffs' pre- and post-shift activities are "work" under the FLSA. While the FLSA does not define the term "work," the Supreme Court has defined work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *See Armour & Co. v. Wantock,* 323 U.S. 126, 132 (1944). Defendant argues that Plaintiffs: "do not allege that NDOC requires *when* each officer is required to perform" the identified activities or that NDOC required them to do these activities "off-the-clock"; do not allege in the FAC that there are "differences in the time when Plaintiffs are required to report to the prison [versus] when they are required to report to their assigned posts for the day"; "arrive early for their own convenience or the convenience of fellow employees"; and fail to allege sufficient facts to show that NDOC derives any benefits from these activities because "[p]resumably, NDOC's respective prisons still have officers on duty." (ECF No. 99 at 12-14.) However, the Court is able to reasonably infer from the allegations in the FAC that NDOC required these activities to be performed "without compensation" and therefore off the clock; that these activities were required to be performed before the start of regularly scheduled shifts and after the end of regularly scheduled shifts; and that Plaintiffs arrived early to complete these preliminary tasks because NDOC required them to do so. (*See, e.g.*, ECF No. 95 at ¶¶ 19-22.) Moreover, if the Court assumes as true that NDOC requires Plaintiffs to perform these tasks, it is reasonable to infer that

11

NDOC derives some benefit from these activities, ostensibly by ensuring that incoming correctional officers are prepared to deal with any safety or security issues that may arise during their shifts.[7] (*See* ECF No. 95 at ¶ 31 ("Officers were required to report to their shift supervisor because correctional officers' assignments can change from day to day based on the needs of the institution" and other things "such as security issues, lockdown situations, changes in rules, and inmate problems"); *see also id.* at ¶ 33 (both supervisor and outgoing officer briefings were necessary because they were the source for security information for both the entire facility and the specific post); *see also* ECF No. 99 at 14 (Defendant admitting that the "benefit NDOC derives from its officers is the safety and security of the prison").)

Defendant next argues that the FAC fails to identify how the pre- and post-shift activities are intrinsic to the job of guarding a prison and that the Court may not "presume the facts necessary to establish the sufficiency of Plaintiffs' allegations." (ECF No. 99 at 15.) However, the Court is able to reasonably infer from the factual allegations in the FAC as well as from common sense why these activities are "an intrinsic element" of a correctional officer's principal activities and "ones with which the employee cannot dispense if he is to perform his principal activities." *See Busk*, 135 S. Ct. at 517. As to the purported requisite preliminary activities of check-in and receipt of assignments, "a law enforcement entity cannot ensure the safety of the population it oversees without (1) knowing who is present at a given time and (2) dispatching those that are present to attend to the greatest need." (ECF No. 105 at 12.) Moreover, "a correctional officer simply cannot perform his required job duties without first knowing where to go (whether to the exercise yard or to transport an inmate) nor can he perform his job effectively without knowing whether there is any potential dangerous situation developing amongst the inmates (such as a gang related issue or hunger strike)." (ECF No. 105 at 14.) The

---

[7]For example, by briefing an incoming officer so that he is aware of any inmates on the officer's block that have been having behavioral or disciplinary issues, or by ensuring that incoming officers have proper tools to communicate with other officers and protect the prison during their shift.

activities of check-in and receipt of assignments are therefore necessary to perform the officer's principal duties of safeguarding the prison during his shift.

As to the preliminary activity of retrieving tools and gear, correctional officers need specific items in order to perform assigned duties, for instance, handcuffs to transport inmates or tear gas to quell a potential riot. (*See* ECF No. 105 at 14.) Retrieving tools and gear, as described in the FAC (ECF No. 95 at ¶ 32), is distinguishable from the example Defendant identifies in its motion of "polishing shoes, boots and duty belts, cleaning radios and traffics vests, and oiling handcuffs." (ECF No. 99 at 15 (citing *Musticchi v. City of Little Rock, Ark.*, 734 F. Supp. 2d 621, 630-32 (E.D. Ark. 2010)).) As alleged, Plaintiffs are not cleaning gear; they are retrieving gear that is "necessary and required to complete their daily job tasks"—tasks which they are informed of only once they arrive at the prison and receive a work assignment from their supervisor. (*See* ECF No. 95 at ¶ 32.) As alleged, this activity is therefore indispensable to the officer's principal duties.

As to the preliminary activity of uniform inspection, the FAC contends that "if [a correctional officer's] uniform was not up to standards" then the officer "could not proceed to their post[]." (ECF No. 95 at ¶ 31(b).) Defendant argues that because a uniform can be put on at home, this activity is not compensable under FLSA. (ECF No. 112 at 7 (citing *Balestrieri v. Menlo Park Fire Protection Dist.*, 800 F.3d 1094, 1100 (9th Cir. 2015)).) However, Plaintiffs do not contend that it is putting on a uniform at work that is compensable; rather, they state that uniform inspection by an officer's shift supervisor is a component of "muster" and is therefore compensable because it is required. (*See* ECF No. 95 at ¶ 31(b).) While the time spent by a supervisor visually inspecting an officer's uniform may itself be *de minimus*, it is a purported component of "muster" and therefore part of a continuous workday activity that is integral to the officer's principal duty of ensuring the safety of the prison and monitoring its inmates.

///

As to the preliminary activity of walking from check-in, receipt of assignment, and tool collection to an officer's assigned post for the day, this activity is compensable under the "continuous workday doctrine." *See IBP, Inc.*, 546 U.S. at 37 ("[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded [from the Portal-to-Portal Act's travel exemption], and as a result is covered by FLSA.")

As to the postliminary activity of outgoing correctional officers briefing incoming officers, this is similarly necessary to the safety and security of the prison, and is an integral part of the officers' principal duties. (ECF No. 106 at 16-17.) Finally, as to the postliminary activities of walking back to and returning any tools or gear taken by an officer, the allegations in the FAC permit the Court to reasonably infer that Plaintiffs were not allowed to take these tools and gear home with them and so were required to return them. As Plaintiffs are purportedly required to take these tools and gear before starting their shifts in order to perform their assigned duties, the postliminary activity of returning tools or gear is also indispensable to their principal duties during their shifts.

Defendant also argues that these activities are *de minimus* and again asserts that the factual allegations in the FAC are implausible (*see, e.g.*, ECF No. 112 at 6, 7 ("surely de-briefing and returning tools must take less than a minute as plaintiffs must walk back the same way they came" and "[t]here is no factual basis for this Court to even attempt to estimate such time for 'walking to post' since plaintiffs admit in their complaint they all worked at different facilities and in different locations in those facilities")). The Court, however, does not quibble about the plausibility of facts when doing so would require this Court to look at evidence outside the pleadings. What is sufficient at this stage of the litigation is that there is a scope of activities that employees must perform, that these activities are integral and indispensable to their positions as prison guards, and that the factual allegations are that these activities generally take 45 minutes to perform "off the clock." The Court therefore finds that the FAC's allegations

permit this Court to make the reasonable inference that these activities, as alleged, are not *de minimis*.

Defendant's Motion to Dismiss is therefore denied as to Plaintiff's claim for violation of the FLSA's overtime provision.

### D. Minimum Wage Amendment Claim

It is unclear from the plain language of the MWA whether "other entity" applies to the state government. The MWA states in relevant part that an "employer" is any "other entity that may employ individuals." Nev. Const., art. 15, § 16, cl. 7. Defendant contends that the MWA does not apply to it because NRS Chapter 284 governs the relationship between the State of Nevada and its employees. (*See* ECF No. 99 at 17-19.) Plaintiffs respond that the state government is not identified as one of the entities exempt from the MWA and that the MWA superseded NRS Chapter 284. (*See* ECF No. 105 at 20-23.) Resolution of this matter requires the Court to interpret state law; therefore, the Court questions whether certification of the issue to the Nevada Supreme Court is warranted.

The Court therefore denies Defendant's Motion to Dismiss as to this claim without prejudice and directs supplemental briefing as to whether this issue should be certified and the effect of certification on the remaining claims in this action.

### E. NRS § 284.180 Claim

Defendant argues that Plaintiff has failed to plead facts demonstrating they have exhausted the administrative requirements of NRS Chapter 284. (ECF No. 99 at 19-20.) Specifically, this process requires that claimants first file a grievance regarding issues of compensation or working hours, that they then appeal the decision regarding their grievance to the Employee Management Committee ("EMC"), and that, if still unsatisfied, they obtain judicial review of EMC's decision by filing a petition within 30 days. *See* NRS §§ 284.384, 233B.130(2)(d). Plaintiffs respond that they do not need to exhaust the administrative process and have a "direct private right of action to enforce

///

the overtime provisions contained in NRS [§] 284.180" (ECF No. 105 at 23) because NRS § 284.195 provides:

> Any person employed or appointed contrary to the provisions of this chapter and the rules and regulations thereunder whose payroll or account is refused certification shall have an action against the appointing authority employing or appointing or attempting to employ or appoint the person for the amount due by reason of such employment or purported employment, and the costs of such action.

However, Plaintiffs are wrong. NRS § 284.195 applies where an "employee" has been appointed to a position of employment by an "appointing authority" where the appointment of the employee is "contrary to law and regulation" and payroll certification does not occur. That unlawfully appointed "employee" then may sue the "appointing authority" and not the State of Nevada, *see* NRS § 284.190(2) & (3), for the amount that "employee" is owed based on any work she performed, and she may initiate a private right of action without going through the administrative grievance process normally required of state employees.

Failure to exhaust state administrative remedies is claim-dispositive and, therefore, state law applies in determining whether a claim for violation of NRS § 284.180 is justiciable in this Court. *See Hanna v. Plumer*, 380 U.S. 460, 467 (1965) ("The Erie rule is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court."). Because the Nevada Supreme Court has found that such a claim is not ripe for judicial review unless all state administrative remedies have been exhausted, *see City of Henderson v. Kilgore*, 131 P.3d 11, 14-15 (Nev. 2006), this Court will follow Nevada's lead and will not address the claim.

Therefore, the claim for violation of NRS § 284.180 is dismissed without prejudice.

**F. Breach of Contract**

Defendant argues in relevant part that NDOC's Variable Work Schedule Request form ("Variable Request Form") is not an employment agreement and is instead a

16

1  document simply giving employees the choice of working either a forty-hour workweek
2  over the course of five days or an eighty-hour workweek over the course of fourteen
3  days. (ECF No. 99 at 20-21; *see also* ECF No. 95-5 at 2.) Plaintiffs state that "Plaintiffs'
4  breach of contract claim is premised upon the determination that the pre- and post-shift
5  work is compensable under federal and state law." (ECF No. 105 at 23.) They go on to
6  state that the "agreements were those that correctional officers would be compensated
7  overtime when they worked over 40 hours in a workweek or over 80 hours in a biweekly
8  pay period, depending on the variable work schedule the employee chose." (*Id.*) Based
9  on the FAC, this "agreement" appears to be the Variable Request Form. (*See* ECF No.
10 95 at ¶ 95 ("Defendant had an agreement with Plaintiffs and with every Class Member
11 under the Nevada Department of Corrections Variable Work Schedule to pay
12 overtime").)

13 The Variable Request Form, however, is clearly an agreement to work a variable schedule in a workweek, not an agreement or contract to pay overtime. To the extent the Variable Request Form states that overtime will be paid under NRS § 284.180, this is merely a statement of what the law requires of Defendant. The Court therefore finds that the Variable Request Form is not a contract to pay overtime wages to Plaintiffs. The Court therefore dismisses the breach of contract claim.

19 **VI. CONCLUSION**

20 The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's motions.

24 It is therefore ordered that Defendant's Motion to Strike (ECF No. 98) is denied.

25 It is further ordered that Defendant's Motion to Dismiss (ECF No. 99) is granted in part and denied in part. It is granted as to Plaintiffs' claim for violation of NRS § 284.180 and Plaintiffs' claim for breach of contract. It is denied as to Plaintiff's remaining
28 ///

claims and is denied without prejudice as to Plaintiffs' claim for violation of the Minimum Wage Amendment.

It is further ordered that the parties are to file supplemental briefs of no more than five (5) pages each within seven (7) days of this order to explain if certification of the question whether the Minimum Wage Amendment applies to state government employees is warranted and what effect certification would have on the remaining claims in this action.

DATED THIS 26th of March 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE