1  SHERI M. THOME, ESQ.
   Nevada Bar No. 008657
2  JAMES T. TUCKER, ESQ.
   Nevada Bar No. 012507
3  CARA T. LAURSEN, ESQ.
   Nevada Bar No. 014563
4  **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
   300 South Fourth Street, Eleventh Floor
5  Las Vegas, Nevada 89101
   Tel: 702.727.1400/Fax: 702.727.1401
6  Sheri.Thome@wilsonelser.com
   James.Tucker@wilsonelser.com
7  CaraT.Laursen@wilsonelser.com
   *Attorneys for Defendant The State of Nevada, ex rel.*
8  *its Department of Corrections*

9

                    **UNITED STATES DISTRICT COURT**
10
                         **DISTRICT OF NEVADA**
11

12  DONALD WALDEN, JR., et al., etc.,        CASE NO:   3:14-cv-00320-MMD-WGC

               Plaintiffs,
13
                                            **DEFENDANT STATE OF NEVADA *EX***
         v.                                 ***REL.* DEPARTMENT OF CORRECTIONS'**
14                                          **MOTION FOR SUMMARY JUDGMENT**
    THE STATE OF NEVADA, EX REL. NEVADA     **ON SOVEREIGN IMMUNITY**
15  DEPARTMENT OF CORRECTIONS, and
    DOES 1-50,
16
               Defendants.
17

18       Defendant The State of Nevada, *ex rel.* Nevada Department of Corrections ("NDOC"), by

19  and through undersigned counsel, moves for summary judgment on Plaintiffs' claims under the Fair

20  Labor Standards Act ("FLSA").

21                  **MEMORANDUM OF POINTS AND AUTHORITIES**

22  **I.      Introduction**

23       This Court should grant NDOC summary judgment based on Supreme Court precedent, the

24  language of NRS 41.031, and Nevada's administrative scheme to resolve state employee

25  compensation disputes.

26       First, nothing in Congress' Article I powers permits Congress to impose a FLSA private right

27  of action against a non-consenting state.  Four cases confirm this bedrock federalism principle:  last

28  month's *Allen v. Cooper*, 2020 U.S. LEXIS 1909 (Mar. 23, 2020) (No. 18-877), *Alden v. Maine*, 527

1586039v.1

U.S. 706 (1999), *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627 (1999), and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

Second, Nevada has not waived its sovereign immunity to private suits under the FLSA. The relevant state statute, NRS 41.031, contains no "unequivocal express[ion]" of Nevada's intent to waive sovereign immunity to private suits for damages under the FLSA. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99 (1984). Forty years of precedent confirms NRS 41.031(1)'s purpose as a qualified waiver of immunity for torts. *Compare Hagblom v. State Director of Motor Vehicles*, 93 Nev. 599, 604, 571 P.2d 1172, 1176 (Nev. 1977) *with Franchise Tax Bd. v. Hyatt*, 133 Nev. 826, 835, 407 P.3d 717, 728 (2017), *rev'd on other grounds*, 139 S. Ct. 1485 (2019).

Third, this Court should not jettison Nevada's comprehensive administrative scheme to resolve state employee compensation disputes. Under Nevada law, employees must grieve their compensation disputes. Plaintiffs ignored Nevada's grievance procedure and seek an end-run around it through a private right of action under the FLSA. But that strategy is conclusively foreclosed by *Allen*.

For these reasons, this Court should grant NDOC summary judgment.

## II.     Procedural History

Plaintiffs filed an Amended Complaint in which they alleged wage and overtime claims under the FLSA, failure to pay minimum wages under Nevada's Constitution, failure to pay overtime as required by NRS § 284.180, and breach of contract. [ECF No. 95 - FAC.]  NDOC asserted that it enjoyed sovereign immunity in its affirmative defenses and denied waiving sovereign immunity in the body of the answer. [ECF No. 175 - Answer to FAC, Third Aff. Def. and denial at ¶ 3].

The Ninth Circuit had no opportunity to consider *Allen*'s impact on this case. The Court adopted a categorical rule that a "State defendant that removes a case to federal court waives its immunity from suit on all federal-law claims brought by the plaintiff." *See Walden v. Nevada*, 945 F.3d 1088, 1095 (9th Cir. 2019) (amended op.). In so holding, the Ninth Circuit determined it had no interlocutory appellate jurisdiction over Nevada's assertion of its sovereign immunity from

1586039v.1

liability.  *Id.* at 1092 n.1.  Several months later, the United States Supreme Court decided *Allen*.

III.    **Legal Discussion**

        A.    **State sovereign immunity is the rule, absent valid abrogation.**

The Constitution recognizes the States as sovereign entities.  *Alden*, 527 U.S. at 728; *Seminole Tribe,* 517 U.S. at 71 n.15.  As the Supreme Court explained in *Allen*, the bar against an individual suing a non-consenting State extends well beyond the language of the Eleventh Amendment.  *Allen*, 2020 U.S. LEXIS 1909 at *9.  The "Court has long understood that Amendment to 'stand not so much for what it says' as for the broader 'presupposition of our constitutional structure which it confirms.'"  *Id.* (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).

"'[E]ach State is a sovereign entity in our federal system.'"  *Allen*, 2020 U.S. LEXIS 1909 at *9 (quoting *Seminole Tribe*, 517 U.S. at 54).  An essential attribute of that sovereignty is the constitutional right "'not to be amenable to the suit of an individual *without its consent*'"  *Alden*, 527 U.S. at 716-17 (quoting THE FEDERALIST NO. 81 (Alexander Hamilton)) (italics in original); *see also Allen*, 2020 U.S. LEXIS 1909 at **9-10 (same).  Sovereign immunity thus protects a State's treasury from private suit.  *See Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 39-40 (1994).  The federal constitutional design reserves to sovereign States such as Nevada "a substantial portion of the Nation's primary sovereignty, together with the dignity and essential attributes inhering in that status."  *Alden*, 527 U.S. at 714; *see also Allen*, 2020 U.S. LEXIS 1909 at *9 (quoting *Blatchford*, 501 U.S. at 779, and stating that the "fundamental aspect of sovereignty constrains federal 'judicial authority'").

There are only two narrow exceptions to sovereign immunity.  First, Congress can authorize private suits against a non-consenting State through appropriate legislation enacted within the scope of power granted to it under the Constitution.  *City of Boerne v. Flores*, 521 U.S. 507, 519-20, 536 (1997).  Second, a State may waive its sovereign immunity and consent to be sued.  *Alden*, 527 U.S. at 755; *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

3

1586039v.1

Neither of those two exceptions is present in this case.  Accordingly, Plaintiffs' FLSA claims must be dismissed with prejudice.

**B.**     **Congress lacks the authority to authorize private suits under the FLSA against non-consenting States like Nevada.**

Plaintiffs cannot establish that Congress has validly authorized private FLSA claims such as theirs to be brought against a non-consenting State like Nevada.  Neither of the two essential conditions to establishing a valid authorization are met here.  First, Congress did not enact the statute in question using "'unequivocal statutory language' abrogating the States' immunity from suit." *Allen*, 2020 U.S. LEXIS 1909 at *10 (quoting *Seminole Tribe*, 517 U.S. at 56).  Second, no "'constitutional provisions [] allow Congress to have thus encroached on the [Nevada's] sovereignty.  Not even the most crystalline abrogation can take effect unless it is a 'valid exercise of constitutional authority.'" *Allen*, 2020 U.S. LEXIS 1909 at *10 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 78 (2000)).

There is no "valid exercise of constitutional authority" that allows Congress to waive Nevada's sovereign immunity from the FLSA's provisions authorizing damages for proven violations.  The commerce powers in Article I provide no such authority.  Nor does the scope of congressional power under the Enforcement Clause of the Fourteenth Amendment, which was nowhere cited by Congress in the FLSA's passage, provide such authority. The FLSA thus fails to abrogate Nevada's sovereign immunity because Congress lacks any proper basis to do so under its limited authority to impose federal mandates on unwilling States.

**1.**     **The FLSA was enacted under the Commerce Clause in Article I, but Congress' right to impose a private right of action against non-consenting states has never been clear.**

Since 1938, the FLSA has been one of the principal battlegrounds over congressional efforts to impose mandates on unwilling States.  As originally enacted, the Act applied only to private-sector workers.  *See* Fair Labor Standards Act of 1938, Pub. L. No. 75-718, § 3(d), 52 Stat. 1060 (excluding "any State or political subdivision of a State").  The Act was grounded in the power of Congress "to regulate commerce among the several States" to ameliorate burdens on "commerce and the free flow of goods in commerce."  *Id.* at § 2.  Three years later, the Supreme Court unanimously

4

1586039v.1

concluded that the Commerce Clause allowed Congress to regulate the wages of private-sector workers, regardless of whether their activities or the goods they produced crossed State lines. *See United States v. Darby*, 312 U.S. 100, 118-20 (1941).

In the 1960s, Congress began its efforts to expand the FLSA to cover state employees. In 1961, the Act was amended to cover all employees of any "enterprise engaged in commerce or in the production of goods for commerce" within a list of certain categories. Fair Labor Standards Amendments of 1961, Pub. L. No. 87-30, § 3(s), 75 Stat. 65, 66. In 1966, Congress for the first time attempted to cover certain state employees by expanding "enterprise" to apply to workers employed in hospitals, nursing homes and schools "regardless of whether" those employers were "public or private…." Fair Labor Standards Act Amendments of 1966, Pub. L. No. 89-601, § 203(s)(4), 80 Stat. 830, 832. Congress also amended the definition of "employer" to apply the Act "with respect to employees of a State, or a political subdivision thereof" that were employed in hospitals, nursing homes, and schools. *Id.* at § 203(d), 80 Stat. 831. Two years later, the Supreme Court upheld the application of the FLSA to the listed state employees as a valid exercise of Commerce Clause powers. *See Maryland v. Wirtz*, 392 U.S. 183, 198-99 (1968).

In 1973, the Court revisited the application of the FLSA to certain state employees. In *Employees v. Missouri Department of Public Health and Welfare*, the Court found that when Congress expanded the FLSA to apply to those state employees, it did not abrogate state sovereign immunity through "clear language." 411 U.S. 279, 285 (1973). The Court explained, "we have found not a word in the history of the 1966 amendments to indicate a purpose of Congress to make it possible for a citizen of that State or another State to sue the State in the federal courts." *Id.* Instead, Congress had left intact language in § 216(b) of the Act that made clear that States could not be sued. *Id.* As a result, the Court held that a State's immunity from suit in federal court under the Eleventh Amendment barred a private action by covered state workers under the Act. *Id.*

The next year, Congress responded by making three changes to the FLSA to attempt to apply the Act to non-consenting States. First, it amended the FLSA's definition of "employee" to include most of the public employees of a State. *See* Fair Labor Standards Amendments of 1974, 93 Pub. L.

5

1586039v.1

No. 259, § 6(a)(2), 88 Stat. 55, 58-59 (codified at 29 U.S.C. § 203(e)(2)(c)).  Second, the definition of "enterprise engaged in commerce or in the production of goods for commerce" was expanded to include "an activity of a public agency."  *Id.* at § 6(a)(3), 88 Stat. 59-60 (codified at 29 U.S.C. § 203(e)(3)(s)).  Third, Congress amended § 216(b) of the Act by changing "in any court of competent jurisdiction" to "against any employer (including a public agency) in any Federal or State court of competent jurisdiction."  *Id.* at 6(d)(1), 88 Stat. 61.  This effort to apply the FLSA to States again was made under the commerce powers of Article I of the Constitution.  *See* 29 U.S.C. § 202.  The amending language was "among the first statutory enactments purporting in express terms to subject nonconsenting States to private suits."  *Alden*, 527 U.S. at 744.

The 1974 FLSA amendments marked a substantial escalation of attempts by Congress to try to subject States like Nevada to private suits, departing from "'almost two centuries of apparent congressional avoidance of the practice.'"  *Id.* (quoting *Printz v. United States*, 521 U.S. 898, 918 (1997)).  For the first time, the FLSA imposed "upon almost all public employment the minimum wage and maximum hour requirements previously restricted to employees engaged in interstate commerce."  *National League of Cities v. Usery*, 426 U.S. 833, 839 (1976).  This dramatic expansion of the Act under Article I commerce powers created requirements for state workers "essentially identical to those imposed upon private employers…"  *Id.*  Those changes were a high-water mark in the FLSA's departures from well-accepted norms of respecting State sovereignty.

*National League of Cities* overruled *Wirtz*, which had been decided just eight years earlier.  426 U.S. at 855.  The Court agreed with the States' contention that "when Congress seeks to regulate directly the activities of States as public employers, it transgresses an affirmative limitation on the exercise of its power akin to other commerce power affirmative limitations contained in the Constitution."  *Id.* at 841.  The Court found that "[t]his exercise of congressional authority does not comport with the federal system of government embodied in the Constitution."  *Id.* at 852.  The FLSA, as applied to the States, was outside congressional Commerce Clause powers to the extent that it "directly displace[d] the States' freedom to structure integral operations in areas of traditional governmental functions…"  *Id.*

6

1586039v.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Just nine years later, the Court found that determining which governmental functions were "integral" or "traditional" to trigger a States' immunity to the FLSA's minimum wage and overtime requirements was an unworkable standard. *Garcia v. San Antonio Metropolitan Transit Authority*. *See* 469 U.S. 528, 530-31, 546-47 (1985). The Court declined to redefine the limitations that State sovereign immunity imposed upon congressional action under the Commerce Clause. *See id.* at 547-48. Instead, *Garcia* concluded that the States could sufficiently protect their immunity through their ability to exercise "their influence" through the federal legislative process. *Id.* at 552-54. "The result of *Garcia* was to bring all employees of the states and their political subdivisions within the full coverage of the FLSA." *Gilbreath v. Cutter Biolagical, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991).

> **2.     *Allen* conclusively establishes that the commerce powers in Article I do not allow Congress to impose a private right of action under the FLSA on non-consenting States.**

This term, the Supreme Court resolved, once and for all, the question: Is Congress empowered by the Commerce Clause of Article I to abrogate State immunity to the FLSA? It is not, according to a unanimous Court.[1] *Allen* completes the trilogy of cases that began with *Seminole Tribe* in 1996 and was followed by *Alden* in 1999. It is now well-established that in attempting to use the Commerce Clause to apply the FLSA to non-consenting States, Congress exceeded its constitutional authority and intruded on the sovereignty of the States to remain free of such federal encroachments.

In *Allen*, the Supreme Court reaffirmed that Article I provides Congress with no authority to abrogate a State's sovereign immunity. Instead, the Court found that only the Bankruptcy Clause of Article I compels the States to be hauled into federal court. *See* 2020 U.S. LEXIS 1909 at **13-14 (citing *Central Va. Cmty. v. Katz*, 546 U.S. 356, 359 (2006)). However, that is not because the Bankruptcy Clause abrogates the States' sovereign immunity. Rather, the Supreme Court "decided

---

[1]   Justices Breyer and Ginsburg concurred, finding that *Seminole Tribe* and its sovereign immunity progeny dictated that conclusion. *See* 2020 U.S. LEXIS 1909 at *32 (Breyer, J., concurring). Notably, Justice Breyer acknowledged that any federal efforts to abrogate sovereign immunity rested not in the Commerce Clause, but in § 5 of the Fourteenth Amendment. *See id.* at **31-32.

that no congressional abrogation was needed because the States had already 'agreed in the plan of the [Constitutional] Convention [of 1787] not to assert any sovereign immunity defense' in bankruptcy proceedings." *Allen,* 2020 U.S. LEXIS 1909 at *16 (quoting *Katz*, 546 U.S. at 377).

If the broad authority granted to Congress in the Intellectual Property Clause to secure uniformity of copyrights and patents is insufficient to sustain federal mandates imposed on non-consenting States,[2] then none of the other Article I powers can possibly do so outside of the bankruptcy arena. *Allen* firmly shuts the door on congressional attempts to abrogate the sovereign immunity of the States through the Commerce Clause. Thus, as the Court earlier found in *Alden*, Congress could not constitutionally abrogate the States' sovereign immunity to the FLSA.

### 3.   *Alden* holds that Congress lacks the authority under Article I to create jurisdiction in any court for FLSA claims against a non-consenting State

In *Alden*, a group of state-employed probation officers sued the State of Maine in federal court, alleging violations of the FLSA and seeking overtime compensation and liquidated damages. 527 U.S. at 711-12. While their suit was pending, the Supreme Court decided *Seminole Tribe*, "which made it clear that Congress lacks power under Article I" of the Constitution "to abrogate the States' sovereign immunity from suits commenced or prosecuted in the federal courts." *Id.* at 712. The federal district court responded by dismissing the FLSA claims of the *Alden* plaintiffs. *Id.* The plaintiffs then filed the same action in state court. *Id.* The state court dismissed their lawsuit on the basis of sovereign immunity, and the Maine Supreme Judicial Court affirmed. *Id.*

On appeal, the Supreme Court concluded that *Seminole Tribe*'s limitations on congressional commerce powers to impose federal jurisdiction on the States was equally applicable to state court jurisdiction. 527 U.S. at 711. In particular, the *Alden* Court held that the State of Maine was immune from state employee FLSA civil actions, concluding that Congress did not have the power under Article I to subject non-consenting states to suits in their own courts. *Id*. at 754. Congress lacks this power, not because of the Eleventh Amendment's text (which applies only to federal courts), but because of the "Constitution's structure, its history, and the authoritative interpretations"

---

[2]   *See Allen*, 2020 U.S. LEXIS 1909 (striking down the Copyright Remedy Clarification Act of 1990); *Florida Prepaid*, 527 U.S. at 627 (striking down the Patent and Plant Variety Protection Clarification Act of 1992).

1586039v.1

of the Supreme Court.  *Id*. at 713.  "When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States."  *Id.* at 732.  The States retain their "immunity in sweeping terms, without reference to whether the suit was prosecuted in state or federal court."  *Id.* at 745.

*Alden* explains why the monetary demands made by Plaintiffs in FLSA actions such as this necessitate that States retain broad immunity from liability from federal claims.  A contrary conclusion would force a State to "defend or default" and "face the prospect of being thrust, by federal fiat and against its will, into the disfavored status of a debtor, subject to the power of private citizens to levy on its treasury or perhaps even government buildings or property which the State administers on the public's behalf."  *Id.* at 749.  In the process, "Private suits against nonconsenting States – especially suits for monetary damages – may threaten the financial integrity of the States."  *Id.* at 750.

*Alden* clarifies that in enacting the FLSA, Congress did not constitutionally abrogate the States' immunity from suit in federal court or immunity from liability under the statute.  *Id.* at 712.  As a result, the combined effect of *Seminole Tribe* and *Alden* is to make it black-letter constitutional law that a State enjoys sovereign immunity from FLSA claims in any court, including both federal court and its own state courts, unless it expressly waives that immunity.  Consequently, Plaintiffs cannot pursue their FLSA claims against the State of Nevada under the first exception to sovereign immunity.

> **4.** **The Circuit Courts agree that Section 5 of the Fourteenth Amendment does not empower Congress to abrogate a State's sovereign immunity from FLSA liability.**

Because this case does not implicate the Bankruptcy Clause, and the Supreme Court has held that the rest of Article I does not permit Congress to abrogate State sovereign immunity, the only remaining basis for an FLSA suit against Nevada is Section 5 of the Fourteenth Amendment.  If the FLSA was an exercise of Congress' power derived from Section 5, then it could—in theory—be a valid means of stripping Nevada of immunity.  *See Allen*, 2020 U.S. LEXIS 1909 at **17-19.  However—as every federal court of appeals to consider the question has held – the FLSA was not an

9

1586039v.1

exercise of Congress' Section 5 power.  Congress may abrogate state sovereign immunity under Section 5 only if the abrogation "sufficiently connects to conduct courts have held Section 1 [of the Fourteenth Amendment] to proscribe."  *Id.*  Six circuits have considered whether the FLSA sufficiently connects to the Fourteenth Amendment's proscriptions, and six circuits have concluded that it does not.[3]  If Plaintiffs raise this argument, this Court should reject it, in accordance with that unanimous authority.

**B.**     **Nevada has not waived its sovereign immunity from private FLSA actions.**

Nevada retains its immunity unless Plaintiffs can demonstrate that it has somehow waived that immunity. As this Court recognized in its March 1, 2018 Order, waiver of a State's sovereign immunity will be found "only where stated by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction…"  [ECF No. 147 at 2 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974))].  Plaintiffs cannot meet their heavy burden.

The State of Nevada has not waived its sovereign immunity from private FLSA claims, nor has the State granted Plaintiffs a private right of action for compensation under the FLSA within Nevada law.  While the State has adopted some language from the FLSA into state law, these adoptions are unrelated to the compensation disputes at issue in this case.  In contrast to the federal FLSA, Nevada law contemplates a state administrative process for the adjudication of Plaintiffs' wage and hour claims, and this process has no connection to the federal FLSA or any of its provisions.  Moreover, the express language of NRS 41.031(1) extends to state tort liability only, with certain inapplicable exceptions.  Thus, consistent with *Alden*'s holding, sovereign immunity bars federal FLSA claims against the State of Nevada in its own courts.

Based on these observations, this Court preliminarily concluded that Plaintiffs' FLSA claims did not carry with them a waiver of the State's sovereign immunity, nor was Congress empowered to abrogate this immunity without an express and unmistakable waiver by the State that was absent

---

[3] *See Mich. Corr. Org. v. Mich. Dep't. of Corr.*, 774 F.3d 895, 901-02 (6th Cir. 2014); *Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 339 (1st Cir. 2011); *Keeler v. Fla. Dep't of Health, Div. of Disability Determinations*, 397 F. App'x 579, 582 (11th Cir. 2010) (unpublished); *Abril v. Virginia*, 145 F.3d 182, 186 (4th Cir. 1998); *Raper v. Iowa*, 115 F.3d 623, 624 (8th Cir. 1997); *Aaron v. Kansas*, 115 F.3d 813, 817 (10th Cir. 1997).

1586039v.1

from this record.  [ECF No. 147 at 1-2.]  Specifically, this Court focused on NRS 41.031, which states, in pertinent part, that "[t]he State of Nevada does not waive its immunity from suit conferred by Amendment XI of the Constitution of the United States."  NRS 41.031(3).  As this Court explained:

> Under NRS § 41.031(3), the State of Nevada has explicitly refused to waive its sovereign immunity in suits brought by state citizens in federal court. Thus, it appears that this Court is barred from adjudicating the FLSA claims and this case should be remanded…

[ECF No. 147 at 2 (emphasis added)].  The State agrees with this Court's conclusions, which are equally applicable to this motion.

A State's waiver of sovereign immunity must be "stated by the most express language possible or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction…"  *Edelman*, 415 U.S. at 653.  NRS 41.031(1) was enacted in 1965.  1965 Statutes of Nevada, Page 1413.  This was decades before the FLSA was interpreted to apply to the states, *see Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 555-56 (1985), and nine years before Congress for the first time attempted to amend the Act's definition of "employer" to include certain State employees.  *See* 93 Pub. L. No. 259, § 29(a), 88 Stat. at 76.  Thus, to accept Plaintiffs' argument (made in their previous briefing) that the text of NRS 41.031(1) is a blanket waiver [ECF No. 149 at 2-4] would be to assume that Nevada's legislature in 1965 intended to expose the State to potential liability under any federal statute that Congress might enact in the future.  Plaintiffs' interpretation of NRS 41.031(1) is unpersuasive and incorrect.

Plaintiffs' blanket waiver interpretation is inconsistent with how Nevada's Supreme Court has interpreted NRS 41.031(1).  "Under the doctrine of sovereign immunity, generally, Nevada and its political subdivisions enjoy blanket immunity from tort liability.  The Legislature, however, has waived this immunity on a limited basis."  *Clark Cty. Sch. Dist. v. Richardson Const., Inc.*, 123 Nev. 382, 389, 168 P.3d 87, 92 (Nev. 2007).  No broad waiver was specified nor intended.  Nevada adopted this limited waiver to provide a state counterpart to the Federal Tort Claims Act.  *Martinez v. Maruszczak*, 123 Nev. 433, 444, 168 P.3d 720, 727-28 (Nev. 2007).  "The state's object of NRS

1586039v.1

41.031 is to waive the immunity of governmental units and agencies from liability for injuries caused by their negligent conduct, thus putting them on equal footing with private tort-feasors." *Turner v. Staggs*, 89 Nev. 230, 235, 510 P.2d 879, 882 (Nev. 1973); *see also Glover-Armont v. Cargile*, 134 Nev. Adv. Op. 49, 54, 426 P.3d 45 (Nev. App. 2018) (same*); Jimenez v. State*, 90 Nev. 204, 207, 644 P.2d 1023, 1025 (Nev. 1982) (same).

In 1977, Nevada's Supreme Court explained the statute's purpose as a qualified waiver of immunity for torts. "When the State qualifiedly waived its immunity from liability and consented to civil actions, it did so to provide relief for persons **injured through negligence** in performing or failing to perform non-discretionary operations. It did not intend to give rise to a cause of action sounding in tort whenever a state official or employee made a discretionary decision injurious to some persons." *Hagblom*, 93 Nev. at 604, 571 P.2d at 1176 (Nev. 1977) (emphasis added). Forty years later, Nevada's Supreme Court again reaffirmed that NRS 41.031(1)'s purpose is as a qualified waiver of immunity for **torts**. *Hyatt*, 133 Nev. at 835, 407 P.3d at 728 (emphasis added).

Plaintiffs' interpretation also is inconsistent with the broad retention of sovereign immunity found in NRS 41.032(1). The text of this statute provides that "no action may be brought under NRS § 41.031 … based upon an act or omission by an officer …, exercising due care, in the execution of a statute or regulation…" NRS § 41.032(1). The methods of compensation for state employees and resolving disputes pertaining to compensating employees is entirely governed by Nevada statute and regulation.

Reading NRS 41.032(1) together with Nevada's comprehensive employee grievance process, it is plain that Nevada has never waived its immunity to employee suits under the FLSA. Statutory personnel law determines when a state employee is eligible for overtime. *See generally* NRS 284.180(3). Administrative law governs the rate of overtime pay. NAC 284.250(1). Nevada has an administrative procedure for addressing state employee "grievances," a term which includes "any condition arising out of the relationship between an employer and an employee, including, but not limited to, compensation…" NAC 284.658(2). Under Nevada law, employees must grieve their compensation dispute with their supervisor (NAC 284.678), then to the head of that employee's

12

1586039v.1

department (NAC 284.686), then to the highest administrative level (NAC 284.690), and finally to the State of Nevada's Employee-Management Committee (NAC 284.695).   Nevada specifically adopted this multi-level grievance procedure, which is unlike the FLSA, precisely to avoid lawsuits over compensation of the very kind that the Plaintiffs have asserted in this matter.   Plaintiffs' interpretation of NRS 41.031(1) as a blanket waiver of immunity would render the State's multi-level grievance procedure at once irrelevant and superfluous.

In addition to making the administrative grievance procedure irrelevant, applying the federal FLSA to the State would potentially result in doubling the State's exposure under Nevada law. Under the FLSA, employers face liability for liquidated damages (double damages), 29 U.S.C. § 255(a), which is not allowed under state law.   Moreover, under state law, liability for unpaid overtime may be compensated by providing compensatory time up to 120 hours.   NAC 284.250(3).

Nevada also has not created a state-law private right of action to sue for unpaid compensation under the federal FLSA.   In their earlier briefing before this Court, Plaintiffs included a generic reference to NRS Chapter 284.   [ECF No. 149 at 2.]   In their First Amended Complaint, Plaintiffs specifically referenced NRS § 284.180.   [ECF No. 95, FAC at ¶¶ 42, 87.]   But that law does not create a private right of action.   In opposing the State's Motion to Dismiss that claim, Plaintiffs also relied on NRS 284.195.   [ECF No. 105 at 4.]   But that statute has no relevance to the FLSA.   It merely creates a right of action for improperly employed workers who were not paid because Nevada's Administrator refused to certify payroll.[4]   *See* NRS § 284.195(1).   NRS 284.195(1) purports to punish an appointing authority for improperly hiring someone in the first place by creating a right of action against the appointing authority.   That is why the appointing authority is not reimbursed for sums paid by virtue of such actions.   *See* NRS 284.195(2).

When Nevada wanted to incorporate provisions of the FLSA into its own law, it did so, but notably did not incorporate the FLSA's provisions regarding overtime compensation, the FLSA's statute of limitations, or liquidated damages. The State adopted the federal FLSA only "[f]or purposes of NAC 284.523 to 284.598."   NAC 284.581(1)(b).   These provisions pertain exclusively

---

[4]   This Court reached the same conclusion in its March 26, 2018 Order.   [ECF No. 166 at 15-16.]

13

to attendance and leave issues, but not compensation.  *See generally* NAC 284.523-284.598. Further, even as to attendance and leave issues, they would still be subject to Nevada's administrative grievance procedure since they concern a "condition arising out of the relationship between an employer and employee …"  NAC 284.658(2).

Even if Nevada had incorporated FLSA provisions related to overtime compensation (which it did not), such an action would have no impact upon the State's sovereign immunity from private suit liability.  A State's decision to copy federal standards into state law does not transform state law into federal law any more than mimicking the Federal Rules of Civil Procedure means that federal procedure, as opposed to state procedure, prevails in state courts.  Where state law follows federal law, the result is that there is a state law parallel to a federal cause of action; it does not mean that the federal cause of action *is* the state cause of action (or vice versa).  *See*, *e.g.*, *Mueller v. Thompson*, 133 F.3d 1063, 1064-65 (7th Cir. 1998) (sovereign immunity barred FLSA claim in federal court even where Wisconsin law allowed state overtime claims akin to FLSA overtime claims).

In sum, there is no wavier of sovereign immunity "by the most express language possible" in Nevada law.  *Edelman*, 415 U.S. at 673.  [ECF No. 147 at 2.]  Consequently, NDOC is entitled to summary judgment and all of Plaintiffs' remaining claims under the FLSA must be dismissed with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

14

1586039v.1

**IV.    Conclusion**

NDOC respectfully requests that its Motion for Summary Judgment on Sovereign Immunity be GRANTED.  Because all of Plaintiffs' remaining claims are barred by sovereign immunity, this lawsuit should be dismissed with prejudice.

DATED this 8th day of April, 2020.

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**


BY: */s/ James T. Tucker*
        James T. Tucker
        Nevada Bar. No. (12507)
        300 South 4th Street - 11th Floor
        Las Vegas, NV 89101-6014
        *Attorneys for Defendants The State of Nevada,
        ex rel. its Department of Corrections*

15

1586039v.1

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP and that on the 8th day of April, 2020, I electronically filed and served a true and correct copy of the foregoing **DEFENDANT STATE OF NEVADA *EX REL*. DEPARTMENT OF CORRECTIONS' MOTION FOR SUMMARY JUDGMENT ON SOVEREIGN IMMUNITY** to all parties on file with the CM/ECF:

Mark R. Thierman, Esq.
Joshua D. Buck, Esq.
Leah L. Jones, Esq.
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV  89511
Tel:  775-284-1500
Fax:  775-703-5027
*Attorneys for Plaintiffs*

Christian Gabroy, Esq.
Kaine Messer, Esq.
GABROY LAW OFFICES
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, NV  89012
Telephone:  (702) 259-7777
Fax:  (702) 259-7704
*Attorneys for Plaintiffs*

By:      */s/ Lani Maile*
An Employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

16

1586039v.1