Sheri M. Thome, Esq.
Nevada Bar No. 008657
James T. Tucker, Esq.
Nevada Bar No. 012507
Cara T. Laursen, Esq.
Nevada Nar No. 014563
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
300 South 4th Street - 11th Floor
Las Vegas, NV 89101-6014
Telephone: (702) 727-1400
Facsimile: (702) 727-1401
Sheri.Thome@wilsonelser.com
James.Tucker@wilsonelser.com
CaraT.Laursen@wilsonelser.com
*Attorneys for Defendants The State of Nevada, ex rel.*
*its Department of Corrections*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DONALD WALDEN, JR., et al., etc., | CASE NO:   3:14-cv-00320-MMD-WGC |
| Plaintiffs, | |
| v. | **DEFENDANT STATE OF NEVADA *EX REL.* DEPARTMENT OF CORRECTIONS' MOTION FOR SUMMARY JUDGMENT ON THE MERITS OF PLAINTIFFS' FLSA CLAIMS** |
| THE STATE OF NEVADA, EX REL. NEVADA DEPARTMENT OF CORRECTIONS, and DOES 1-50, | |
| Defendants. | |

Defendant The State of Nevada, *ex rel.* Nevada Department of Corrections ("NDOC"), by and through undersigned counsel, moves for summary judgment on the merits of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA").[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

That the FLSA does not require omniscience on the employer's part is firmly entrenched in Ninth Circuit precedent. *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981). But, that is what Plaintiffs' FLSA theory requires this Court to accept.

---

[1] NDOC respectfully submits that the Court need not even reach the merits of Plaintiffs' FLSA claims, which are barred by Nevada's sovereign immunity under the authority of *Allen v. Cooper*, 2020 U.S. LEXIS 1909 (Mar. 24, 2020) (No. 18-877), *Alden v. Maine*, 527 U.S. 706 (1999), and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

"Every day is different…[e]very different post is different."[2]  These same plaintiffs testified that, regardless of post, the time it took to complete even common tasks such as getting through operations could take mere seconds depending on the day.[3]  NDOC has no way of knowing *ex ante* on any particular day that a particular plaintiff may work overtime compensable under the FLSA. Plaintiffs' act of discarding NDOC's administrative rules and procedures for reporting overtime bars Plaintiffs' FLSA claims under *Forrester*, *supra*.

NDOC also did not sit idly by and accept uncompensated work.  Plaintiffs' sworn testimony confirms that NDOC affirmatively paid for all overtime requested by Plaintiffs.  Plaintiffs cannot, under *Forrester*, build an FLSA case in an infinitely variable work environment by violating NDOC's policies and procedures by failing to accurately and timely report the hours they claimed they worked, including any alleged overtime, in violation of NDOC's policies and procedures.

Accordingly, NDOC is entitled to summary judgment on Plaintiffs' FLSA claims, which are barred by *Forrester* and its progeny.  Those claims should be dismissed with prejudice.

## II.    Statement of Undisputed Facts

### A.    NDOC's comprehensive regulatory and administrative system for overtime

1.    The State of Nevada has a comprehensive regulatory and administrative system in place for overtime and overtime alternatives at NDOC.  *See*, *e.g.*, Ex. K, A.R. 320; Ex. L, Variable Work Schedule Request; Ex. M, Election of Compensatory Time; Ex. Q, A.R. 326; Ex. S, Documents Acknowledging Overtime Requirements; Ex. T, State of Nevada Employee Handbook Excerpts; Ex. GG, A.R. 322.

2.    The overarching principle guiding the use of overtime within NDOC is for Wardens and Facility Managers "to ensure there is sufficient staff on duty to safely operate their institutions and facilities."  [Ex. Q, A.R. 326.]  Thus, the safety of the public, the inmates, and Corrections employees drives overtime decisions.  [*See id.*]

---

[2] Exhibit HH Testimony of Plaintiff, Francisco Bautista at 31:8-18.

[3] Exhibit O Testimony of Plaintiff, Timothy Carlman, at 88:18-89:5.

3.      One of the essential functions of the Correctional Officer position is that "Extended hours may be required on short notice."  [Ex. R, Correctional Officer Position Essential Functions; *see also* Ex. K, A.R. 320.01(4) ("As a condition of employment, employees may be required to work overtime as required by a supervisor and as stated in AR 326, Posting of Shifts/Overtime."); Ex. Q, A.R. 326.03(6) ("If overtime is required to maintain a safe and secure operation and insufficient staff voluntarily agrees to work, mandatory overtime will be initiated.").]

4.      Every Corrections employee, including each Plaintiff, is required to sign an acknowledgment that one of the essential functions of their position is that "Extended hours may be required on short notice."  [*See* Ex. S, Documents Acknowledging A.R. 320, at Table (summarizing documents attached to Ex. S that include the Plaintiffs' signed acknowledgments, such as the acknowledgment of Aaron Dicus at D002326).][4]

5.      "Overtime must be authorized by the Director, appropriate Deputy Director, Division Head, Warden, or their designees."  [Ex. K, A.R. 320.01(1).]

**B.      NDOC Employee Requirements for Accurately Reporting Overtime**

6.      Each Plaintiff is responsible for truthfully reporting the time they work, including all overtime.  Specifically, "an employee shall provide an accurate accounting of the hours worked and leave used during a pay period in the NEATS Timekeeping System ("NEATS"), to include the specific times at which their shift starts and ends and regular days off."  [Ex. Q, A.R. 326.06(1).]

7.      NDOC'S pay reporting is an "exception" reporting system.  NEATS assumes that an employee has worked all hours in their scheduled shift, unless the employee has reported an exception.  "Requests for Overtime must be submitted and approved on the Authorization for Leave and Overtime Request Form DOC-1000 or in NEATS as directed by the Human Resource Administrator."  [Ex. GG, A.R. 322.08(2).]

---

[4]   For the sake of brevity in light of the voluminous record, examples of documentation by Plaintiffs that they have received, read, and understand NDOC's overtime requirements are provided from the personnel file of Aaron Dicus.  A table summarizing the documentation for all of the Plaintiffs is provided in a Table at the beginning of Exhibit S, and is followed by the actual documentation for each of the Plaintiffs.

8.     If there is an exception because of overtime for a non-exempt employee, that employee "must document this time on an Authorization for Leave and Overtime Request form (DOC-1000)."  [Ex. K, A.R. 320.01(2).]

9.     Employee exceptions are reported on timesheets, which the employee is required to input and submit into NEATS "at the conclusion of each reporting cycle (pay period) no later than 12 PM, Wednesday, of the non-pay week for each pay period."  [Ex. Q, A.R. 326.06(4).]

10.     Employees are subject to discipline under A.R. 339 if they falsify their timesheets. [*See* Ex. Q, A.R. 326.06(6).]

**C.     Overtime Eligibility depends on if a Plaintiff is on a Variable Schedule or has elected to Accept Compensatory Time in Lieu of Overtime Wages**

11.     Eligibility for overtime for a particular shift depends on whether the employee has opted to work a standard workweek or a variable (innovative) work schedule using either a 40-hour or 80-hour variable.  [*See* Ex. K, A.R. 320.01(5)-(6).]

12.     Employees who work a standard workweek are eligible for overtime if they work more than eight hours in one calendar day.  [*Id.* at A.R. 320.01(5).]

13.     Employees working a variable (or innovative) work schedule "do not accrue overtime until either (1) they have worked the 41st hour if they signed a 40-hour variable agreement or (2) they have worked the 81st hour, if they have signed the 80-hour variable agreement."  [*Id.* at A.R. 320.01(6); *see also* Ex. L, Variable Work Schedule Request.]

14.     Overtime eligibility also can depend on whether a particular employee has elected to accrue up to 120 hours of compensatory time off in lieu of a cash payment pursuant to 29 C.F.R. § 553.23.  [*See* Ex. M, Election of Compensatory Time.]

15.     Exhibit N demonstrates the many variations in work schedule and compensatory time choices among just the seven named Plaintiffs:

/ / /

/ / /

/ / /

1586193v.1

| Plaintiff | Type of Variable Work Schedule That Plaintiff Opted | | | Compensatory Time Opted in lieu of Cash under 29 C.F.R. § 553.23 | | |
|---|---|---|---|---|---|---|
| | 40 hours | 80 hours | Both | Yes | No | Both |
| | | | | | | |
| Aaron Dicus | | X | | X | | |
| Nathan Echeverria | | | X | | | X |
| Brent Everist | | | X | | | X |
| Timothy Ridenour | | | X | X | | |
| Daniel Tracy | | | X | | | X |
| Donald Walden, Jr. | | | X | X | | |
| Travis Zufelt | | X | | | X | |

16.     Although all seven named Plaintiffs worked a variable (innovative) schedule, just two, Plaintiffs Dicus and Zufelt, used the same type of variable work schedule throughout their employment; the remaining five named Plaintiffs (Echeverria, Everist, Ridenour, Tracy, and Walden) switched between the 40-variable and 80-variable schedules multiple times.  [*See* Exhibit N, Variations in Plaintiffs Work Schedules and Compensatory Time.]

17.     Three of the named Plaintiffs (Dicus, Ridenour, and Walden) opted to receive compensatory time throughout their employment and three (Echeverria, Everist, and Tracy) switched between the options one or more times.  Only one named Plaintiff (Zufelt) opted not to participate. [*See* Exhibit N, Variations in Plaintiffs Work Schedules and Compensatory Time.]

18.     Even if claimed time is compensable, Plaintiffs may not be entitled to any overtime payments depending on their work schedule arrangement.  [*See* Ex. K, A.R. 320.01; Ex. L, Variable Work Schedule Request; Ex. M, Election of Compensatory Time; Exhibit N, Variations in Plaintiffs Work Schedules and Compensatory Time.]

**D.     Plaintiffs' Acknowledgments of Receiving, Reading, and Understanding the Requirements for Overtime and How to Request it**

19.     Each one of the Plaintiffs has acknowledged on multiple occasions that they received, read, and understood these procedures for when they are eligible for overtime and how to report it. [*See* Ex. S, Documents Acknowledging Overtime Requirements.]

20.     At the time of hire, a New Employee Checklist was completed for each Plaintiff to include going over the Administrative Regulations.   [*See* Ex. S, Documents Acknowledging Overtime Requirements, Table; *see also* D002324 (Dicus example).]

21.     Plaintiffs initialed that they had received and reviewed the State of Nevada Employee Handbook, which includes a summary of the policy requiring accurate reporting of all hours and overtime worked.  [*See* Ex. S, Documents Acknowledging Overtime Requirements, Table; *see also* D002336 (Dicus example); Ex. T, State of Nevada Employee Handbook Excerpts.]

22.     Although NDOC has no records indicating that two of the named Plaintiffs, Walden and Zufelt, initialed receiving and reviewing the Handbook, all of the Plaintiffs including Walden and Zufelt acknowledged receiving, reviewing and understanding NDOC's overtime requirements and procedures through other documents.   [*See* Ex. S, Documents Acknowledging Overtime Requirements.]   The Handbook also is available on the Internet from Human Resources at http://hr.nv.gov/uploadedFiles/hrnvgov/Content/Resources/Publications/Employee_Handbook.pdf.

23.     On one or more occasions, Plaintiffs signed and dated an Administrative Regulations Acknowledgment in which they acknowledged, "It is my responsibility to read and familiarize myself" with regulations including A.R. 320 and A.R. 339.  [*See* Ex. S, Documents Acknowledging Overtime Requirements, Table; *see also* D002303, D002335, D002376 (Dicus examples).]

24.     Throughout their employment, on multiple occasions, each Plaintiff signed and dated the Employee Work Performance Standards Form for their position including Element #3, which provides that they "Have proficient knowledge of A.R.'s, I.P.'s and Administrative Directives." [*See* Ex. S, Documents Acknowledging Overtime Requirements, Table; *see also* D002305-2307, D002321-2323, D002439-2441 (Dicus examples).]

25.     Every time each of the Plaintiffs received their written appraisal, they again acknowledged and were rated on whether they had proficient knowledge of the Administrative Regulations, including those pertaining to accurately reporting overtime.[5]

**E.      Plaintiffs Request and Receive Compensatory Time When They Work Longer Than Scheduled**

26.     Plaintiffs who opt into the program receive compensatory time, or "comp time," in

---

[5]    *See* Ex. S, Documents Acknowledging Overtime Requirements, Table; *see also* D002259-2260, D002261-2264, D00269-2272, D002403-2406, D002407-2410, D002411-2414, D002415-2418, D002419-2422, D002423-2426, D002427-2430, D002431-2434, D002435-2438 (Dicus examples).

1586193v.1

lieu of overtime wages.[6]

27.     Compensatory time works both ways.  When employees leave early, they do not notate that on their time report and are still paid for their full shift. [7]

28.     Supervisors rely upon employees to tell them the amount of comp time to which they believe they are entitled for working longer than their scheduled shift.  Paul Kluever's supervisors took him at his word on his "guesstimate" of how much comp time he was owed.  [Ex. II, Kluever Dep., 68:23-69:5.]

29.     Jason Hanski explained, "…. There have been times where I was relieved late and maybe 15 to 20 minutes late and talked to my supervisor directly.  Now, when I say this, this is something that happened a few good years ago, and the supervisor would say, oh, okay, I'll tell you what … I'll let you go 15 or 20 minutes early in exchange for that."  [Ex. JJ, Hanski Dep., 125:22-126:3.]

**F.     Plaintiffs Were Paid Overtime When They Were Eligible and They Complied with NDOC's Reporting Requirements**

30.     Nearly all of the Plaintiffs took advantage of overtime opportunities.  Payroll data for 563 NDOC employees for the period of 12/31/2007 to 2/15/2016 was analyzed and compared with timekeeping data entered into NEATS.  [*See* Ex. F, Crandall Decl. ¶ 7.]  "Of the 555 Correctional Officers in the data, 529 or over 95% recorded some overtime totaling 125,726.9 hours."  [*Id.* at ¶ 32.]

31.     According to that analysis, "the average total Overtime hours recorded was 226.5 hours," with the top three officers each reporting more than 2200 hours.  [*Id.*]  The average total dollars paid in overtime was $7,746.  [*Id.* at ¶ 33.]  "Across all [Correction Officer] periods, overtime was recorded on 10,904 of the 51,959 pay periods or 21.0%."  [*Id.* at ¶ 34.]  Every NDOC facility paid overtime.  [*Id.* at ¶ 36.]  The reasons for the overtime varied considerably between

---

[6] *See* Exhibit N, Variations in Plaintiffs Work Schedules and Compensatory Time (identifying which of the seven named Plaintiffs have opted to receive compensatory time).

[7]   Ex. KK, Banks Dep., 54:24-55:19; Ex. HH, Bautista Dep., 26:18-25; Ex. P, Riggs Dep., 31:21-32:14.

facilities and employees.  [*See id.* at ¶¶ 37-39.]

32.    All seven of the named Plaintiffs were paid overtime, as shown by each Plaintiff's Employee Paycheck Analysis.[8]

33.    All of the opt-in Plaintiffs who were deposed likewise were paid overtime.[9]  When they complied with A.R. 320.01(2) by submitting an Authorization for Leave and Overtime Request Form ("Form DOC-1000"), their requests were approved and they were paid for that overtime.[10]

34.    For example, on May 20, 2014, Plaintiff Echeverria completed a Form DOC-1000 requesting one quarter hour of leave after he apparently worked 15 minutes past his scheduled shift ending at 1:00 p.m.  His request for overtime was approved.  [Ex. F, Nathan Echeverria Employee Personnel File, D002741.]

35.    Similarly, "Plaintiff Walden received 15 minutes of Overtime on November 26, 2010 and the timesheet note associated with the entry was 'HOLIDAY WORKED 15 MINUTES OF OVERTIME FOR BEING RELIEVED LATE.'"  [Ex. F, Crandall Decl. at ¶ 31.]

36.    Likewise, Plaintiffs Everist,[11] Ridenour,[12] and Tracy[13] were approved for multiple instances of overtime after submitting their Form DOC-1000s.

---

[8]  *See* State of Nevada Human Resources Data Warehouse, Employee Paycheck Analysis, Ex. U, D204-209 (Dicus); Ex. V, D390-396 (Echeverria); Ex. W, Brent Everist Employee Personnel File, D685-691 (Everist); Ex. X, Timothy Ridenour Employee Personnel File, D937-942 (Ridenour); Ex. Y, Daniel Tracy Employee Personnel File, D1177-1191 (Tracy); Ex. Z, Donald Walden, Jr. Employee Personnel File, D1438-1445 (Walden); Ex. AA, Travis Zufelt Employee Personnel File, D1797-1801 (Zufelt).

[9]  *See* Ex. BB, State of Nevada Human Resources Data Warehouse, Employee Paycheck Analysis, D007386-007395 (Tyning), D007406-007415 (Valdez), D005676-005684 (Arias), D005695-005703 (Arnold), D005968-005975 (Carlman), D006145-6152 (Day), D006586-006595 (Jones), D006656-006659 (Krol), D006660-006669 (Lai), D006680-006687 (Ledingham), D006889-006898 (Natali), D007029-007037 (Radke), D007240-007249 (Shultz), D009645-009654 (Tremblay), D007656-007664 (Allen), D008421-008429 (Hanski), D008678-008688 (Kluever), D008796-008806 (Maguire), D009283-009288 (Riggs), D009317-009322 (Rocho).

[10]  *See* Ex. JJ, Hanski Dep., 68:15-69:8; Ex. MM, Jones Dep. 44:3-10; Ex. NN, Lai Dep., 24:24-25:2, 29:24-30:7, 34:6-15; Ex. OO, Ledingham Dep., 58:18-59:7; Ex. PP, Ridenour Dep., 44:25-45:14; Ex. P, Riggs Dep., 84:24-85:4, 97:11-16; Ex. QQ, Rocho Dep., 37:12-14; Ex. RR, Tremblay Dep., 37:12-24; Ex. SS, Tyning Dep., 27:3-6.

[11]  *See* Ex. CC, D2989-3013, 3021-3022, 3025, 3028-3029, 3035, 3039-3042, 3051-3052, 3057, 3069.

[12]  *See* Ex. DD, D3239, 3411-3414.

[13]  *See* Ex. EE, D3774-3776.

1586193v.1

37.     What is particularly notable about the NEATS data is that over ten percent of the segments recorded by Correctional Officers represented "time at or below an hour in duration," showing that even overtime of short duration was recorded.  [Ex. F, Crandall Decl. at ¶ 40.]

**G.     Supervisors Put in Some Overtime Requests for Plaintiffs**

38.     Supervisors prepare some overtime requests for Plaintiffs as part of their reports, such as when Corrections Officers have to respond to security incidents that extend their shift.[14]

39.     Andre Natali testified, "And if you respond to [a security] incident everybody's name has to be taken down, whoever comes into the incident area, whoever leaves, what inmates were involved, the location, the time, and the place.  All that stuff is put into reports.  And generally I would come back to work that night and have one waiting for me.  I didn't even have to request it…. [A] DOC-1000."  [Ex. FF, Natali Dep. 41:3-12.]

**H.     Plaintiffs Are Paid Overtime or Comp Time When They Request It**

40.     Plaintiffs consistently are paid overtime or given comp time when they request it.[15]

41.     Donald Riggs "always got paid for my time.  Sometimes you were offered time off in lieu of being paid … I always got my overtime…. I would file the Doc 1000 and turn it in to my supervisor…. *I have never seen a form that I turned in rejected*."  [Ex. P, Riggs Dep., 31:13-20, 33:5-15 (emphasis added); *see also id.* at 84:24-85:4 (same).]

42.     Jan Shultz admitted, "*Whenever I asked for it, I would get it*."  There has never been an occasion when he requested it and did not receive it.  [Shultz Dep., 46:14-16 (emphasis added).]

43.     Andre Natali's testimony highlights the absence of any unified policy or practice by NDOC to deny Correctional Officers overtime:

> Q:     …Have you ever requested overtime pay or comp time for that time [when your relief is late]?

---

[14]   *See, e.g.*, Ex. O, Carlman Dep., 18:24-19:9; Ex. II, Kluever Dep., 62:7-17; Ex. OO, Ledingham Dep., 40:18-41:17; Ex. FF, Natali Dep. 41:3-12; Ex. TT, Radke Dep., 58:8-59:6; Ex. QQ, Rocho Dep., 32:6-11; Ex. UU, Shultz Dep., 43:12-18; Ex. VV, Tracy Dep. 69:16-18.

[15]   *See, e.g.*, Ex.WW, Arnold Dep. 49:3-7; Ex. KK, Banks Dep., 45:2-14; Ex. JJ, Hanski Dep., 120:13-122:7; Ex. GG, Jones Dep., 88:2-9; Ex. II, Kluever Dep., 59:16-60:13, 61:3-24, 62:25-63:7; Ex.NN, Lai Dep., 25:13-26:3; Ex. OO, Ledingham Dep., 59:3-7; Ex. SS, Tyning Dep., 44:3-17, 45:20-46:1.

A:      Sure.

Q:      And have you been paid for it or given comp time for it?

A:      ***I would have to tell you that 99 percent of the times, yes, I was***.  There was only a couple of times that I caught attitude from somebody.  I was like, you know what, I don't feel like arguing with you about it so I would have to say it's, yes, I have been when I requested it, yes.  [Ex. FF, Natali Dep., 62:1-11 (emphasis added).]

**I.      Plaintiffs have not submitted requests for most overtime they claim to be owed**

44.      The Plaintiffs' sworn testimony establishes that in the overwhelming majority of the instances in which they allege that they have not been paid overtime or other compensation they claim they are owed, it is because they did not follow NDOC's policies and procedures and submit an overtime request on a DOC-1000.

45.      Plaintiffs have not submitted overtime requests to NDOC for the activities for which they are seeking compensation in this litigation.[16]

46.      Many of the Plaintiffs have not applied for overtime for responding to security incidents when their supervisor does not do it for them.[17]

47.      Similarly, many of the Plaintiffs have not applied for overtime for being relieved late,[18] with some Plaintiffs like Timothy Carlman admitting they have never reported it to their supervisors.[19]

---

[16]  *See*, *e.g.*, Ex. XX, Allen Dep., 27:19-24, 36:17-37:4; Ex. YY, Arias Dep., 29:20-31:17; Ex. KK, Banks Dep., 17:23-25, 18:19-22, 19:2-12, 41:9-22; Ex. ZZ, Baros Dep., 44:6-13, 57:18-58:1; Ex. HH, Bautista Dep., 26:18-27:7, 56:13-20; Ex. O, Carlman Dep., 17:5-14, 19:23-20:4; Ex. AAA, Day Dep., 28:2-10; Ex. BBB, Dicus Dep., 39:4-9; Ex. CCC, Echeverria Dep., 41:14-17, 43:3-6; Ex. JJ, Hanski Dep., 69:13-16, 122:21-123:13; Ex. MM, Jones Dep., 31:25-32:2; Ex. II, Kluever Dep., 64:1-5; Ex. DDD, Krol Dep., 36:5-6; Ex. NN, Lai Dep., 22:6-13, 23:8-15, 24:10-16; Ex. OO, Ledingham Dep., 26:20-27:3, 30:2-9; Ex. FF, Natali Dep. 18:15-17, 23:4-6, 60:14-17, 72:9-25; Ex. TT, Radke Dep., 24:21-23, 36:15-37:3, 44:8-25, 47:9-18; Ex. PP, Ridenour Dep., 35:6-13; Ex. QQ, Rocho Dep., 16:4-6, 19:6-7; Ex. VV, Tracy Dep., 48:4-8; Ex. RR, Tremblay Dep., 28:17-24; Ex. SS, Tyning Dep., 19:19-20:1, 20:6-8, 25:14-17; Ex. EEE, Walden Dep., 44:24-45:10, 47:17-18; Ex. FFF, Zufelt Dep., 51:6-21.

[17]  *See*, *e.g.*, Ex. ZZ, Baros Dep., 26:2-22, 27:23-28:13, 36:12-37:8; Ex. HH, Bautista Dep., 24:24-25:5; Ex. O, Carlman Dep., 25:24-26:15; Ex. BBB, Dicus Dep., 45:22-46:14; Ex. DDD, Krol Dep., 29:8-12; Ex. OO, Ledingham Dep., 42:2-4; Ex. QQ, Rocho Dep., 26:12-14; Ex. UU, Shultz Dep., 43:8-23; Ex. GGG, Valdez Dep., 30:20-31:35; Ex. FFF, Zufelt Dep., 50:15-51:21.

[18]  *See*, *e.g.*, Ex. XX, Allen Dep., 36:17-37:4; Ex. YY, Arias Dep., 29:20-30:19; Ex. ZZ, Baros Dep., 57:18-58:1; Ex. O, Carlman Dep., 19:23-20:1, 40:10-41:7; Ex. DDD, Krol Dep., 36:2-4; Ex. FF, Natali Dep., 60:14-17.

1586193v.1

**J.     Plaintiffs have not complied with administrative procedures for appealing any overtime requests they have made that have been denied**

48.     Administrative law governs the rate of overtime pay for NDOC employees.  [*See* NAC 284.250(1).]

49.     Nevada has an administrative procedure for addressing state employee "grievances," a term which includes "any condition arising out of the relationship between an employer and an employee, including, but not limited to, compensation…"  [NAC 284.658(2).]

50.     Under Nevada law, employees must grieve their compensation dispute with their supervisor (NAC 284.678), then to the head of that employee's department (NAC 284.686), then to the highest administrative level (NAC 284.690), and finally to the State of Nevada's Employee-Management Committee (NAC 284.695).  Nevada specifically adopted this multi-level grievance procedure, which is unlike the FLSA, precisely to avoid lawsuits over compensation of the very kind that the Plaintiffs have asserted in this matter.

51.     Plaintiffs admit that they have not followed the procedure for appealing overtime decisions by speaking to their supervisor or other managers in their chain-of-command or by filing a grievance.[20]

52.     Travis Zufelt illustrates the point.  He admitted that he was able to obtain overtime compensation by speaking with his supervisor after one request was initially denied:

> Q:     Do you remember what you've requested overtime for?....
>
> A:     I – right now I work overtime just about every day, so I fill out – put NDOC-1000s every day just about right now.
>
> Q:     So you know the process pretty well –
>
> A:     Yes, sir.
>
> Q:     … And what's that process?  You just fill out the … DOC-1000?
>
> A:     Fill out the DOC-1000.  Take it to have a supervisor sign it.  Get a copy of it.

---

[19]  Ex. O, Carlman Dep., 19:23-20:1, 40:10-41:7.

[20]  *See, e.g.*, Ex. YY, Arias Dep., 31:2-23, 59:7-9; Ex. JJ, Hanski Dep., 123:18-124:1; Ex. II, Kluever Dep., 74:1-3; Ex. FF, Natali Dep., at 22:1-3; Ex. P, Riggs Dep., 88:6-8; Ex. PP, Ridenour Dep., 49:18-20; Ex. RR, Tremblay Dep., 37:22-39:1; Valdez Dep., 33:18-20, 47:5013; Ex. EEE, Walden Dep., 46:13-47:8, 79:25-80:5, 88:19-21.

Put that copy in payroll's box.  And out one in your box.

Q:      Okay.  Have you ever had an overtime request denied?

A:      **It was denied at first, but after I argued with the supervisor of why I wanted the overtime, then it wasn't**…. So, yes, it was – denied it once.  [Zufelt Dep., 118:1-119:3 (emphasis added)]

53.      Nevertheless, for subsequent overtime or other compensation issues, Zufelt admitted that he has not spoken about them with the Assistant Warden, or AWO.  [Ex. FFF, Zufelt Dep., 131:25-132:2.]  He also has not filed a grievance over any concerns he has with his compensation or overtime.  [*Id.* at 60:17-21, 141:17-19.]

54.      The decision of these individuals not to comply with A.R. 320.01(2) by requesting overtime or compensatory time, or to appeal any request that is denied pursuant to NAC Chapter 284 is typical of the evidence before the Court at this time.

## III.    Legal Analysis

### A.    Plaintiffs failed to report claimed overtime to NDOC contrary to the procedures they acknowledged receiving, barring their FLSA claims under *Forrester*

"An employee seeking to recover unpaid minimum wages or overtime under the FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'"  *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  To establish a claim for uncompensated wages or overtime, Plaintiffs must demonstrate: (1) that they worked regular or overtime hours without compensation; (2) the amount and extent of the work as a matter of just and reasonable inference; and (3) that their employer "suffered" or "permitted" them to work uncompensated.  *See* 29 U.S.C. § 203(g); *Lindow v. United States*, 738 F.2d 1057, 1061 (9th Cir. 1984).

NDOC moves for summary judgment on the third element of Plaintiffs' prima face case.[21]  Plaintiffs' claims are barred under the controlling authority of *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d at 413, by their own admissions that they violated NDOC's comprehensive policies

---

[21]   In moving for summary judgment on the third element NDOC does not concede Plaintiffs have established the first two elements, which are not material to the instant Motion.

and procedures by failing to accurately and timely report the hours they claimed they worked, including any alleged overtime.

### 1. *Forrester* and its progeny bar FLSA recovery for employees like Plaintiffs who fail to report their time worked to their employer

In *Forrester*, the employer required all of its employees to report overtime on time sheets. *Id.* at 414. The plaintiff knew about the policy and that he was routinely paid all time that he reported to his employer on the timesheets. *Id.* The plaintiff admitted that he had been paid for all of the overtime he had claimed on his timesheets. *Id.* He also acknowledged that he would have been paid all of the overtime that he was seeking in his lawsuit if he had submitted it to his employer. *Id.* Nevertheless, the plaintiff testified in his depositions that he "did not mention any unpaid overtime to any store official prior to filing his complaint." *Id.* The Ninth Circuit held that under those facts, the district court properly granted summary judgment for the employer. *Id.*

The *Forrester* court focused its analysis on the FLSA's definition of "employ," which "includes to suffer or permit to work." *Id.* (quoting 29 U.S.C. § 203(g)). Those words mean "with the knowledge of the employer." *Forrester*, 646 F.2d at 414 (citation omitted). The purpose of this knowledge requirement is to provide an employer with "an opportunity to comply with the provisions of the FLSA." *Id.* But that is not possible when an "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work." *Id.* Where "the acts of an employee from acquiring knowledge," such as the plaintiff's claimed uncompensated overtime hours, "the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a)." *Id.* at 414-15.

The Ninth Circuit subsequently elaborated on the *Forrester* rule in a table opinion, *Raczkowski v. TC Construction Co., Inc.*, published at 1993 U.S. App. LEXIS 26257 (9th Cir. 1993) (mem.). There, the court affirmed the district court's ruling that an employer was not liable under the FLSA for unreported time. *Id.* In reaching that conclusion, the Ninth Circuit rejected the plaintiff's contention that his employer had seen him perform the work for which he was seeking compensation. It explained:

1586193v.1

> Although, as in *Forrester*, the employer in the present case might have seen Raczkowski while he was allegedly working on unreported time, the issue is whether the employer knew that the time was unreported. ***The relevant knowledge is not "I know that the employee was working," but "I know the employee was working and not reporting his time…."*** In this case, Raczkowski has not adduced evidence that the employer knew that Raczkowski was failing to report overtime, so the district court correctly rejected this claim.

*Id.* at *3 (emphasis added).

Judge Siler, who was on the Ninth Circuit's *Raczkowski* panel, subsequently authored a Sixth Circuit opinion that applied the *Forrester* rule and its elaboration in *Raczkowski*. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012). In *White*, the employer hospital used an "exception log" requiring employees to document instances in which their meal break was interrupted by compensable work. *Id.* at 872. The plaintiff signed a document stating that she understood the policy and that she was required to record her time worked in an exception log to receive compensation. *Id.* The plaintiff admitted that when she completed the exception log, she was paid. *Id.* The plaintiff also told her supervisors and human resources periodically that she was not getting a meal break; however, she did not tell them that she was not being compensated for those missed meals. *Id.* The plaintiff eventually stopped completing the exception log, and did not use a procedure she knew about to correct any payroll errors. *Id.*

*White* rejected the plaintiff's claim, which it found barred by *Forrester*. The court held that "[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *Id.* at 876. *Forrester* therefore imposes certain obligations on an employee seeking to recover alleged compensation under the FLSA:

> [T]he employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*Id.* (citation omitted). By failing "to follow the reasonable time reporting procedures" established by an employer, the employee "prevents the employer from knowing its obligation to compensate the

employee and thwarts the employer's ability to comply with the FLSA." *Id.*   Because the plaintiff prevented the employer from knowing that she was not being paid for missed meal breaks, her FLSA claims failed. *Id.* Absent a viable claim under the FLSA, the plaintiff therefore could not serve as a representative for opt-in plaintiffs in the collective action. *Id.* at 877-78.

Other federal courts agree with the logic of the *Forrester* rule and have adopted it as a bar to FLSA recovery by law enforcement plaintiffs that fail to follow an employer's reasonable procedures for reporting their time. *See, e.g.*, *Allen v. City of Chicago*, 865 F.3d 936, 944 (7th Cir. 2017) (rejecting claim where police agency knew officers were working on mobile devices after hours but "did not know that such work was not being reported and paid"); *Hertz v. Woodbury Cty.*, 566 F.3d 775, 781-82 (8th Cir. 2009) (constructive knowledge of overtime could not be imputed to a police department because police officers were "in the best position" to prove they were performing compensable work); *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (rejecting argument that city was responsible for confirming police officer accurately completed payroll forms, which improperly denied the city "the right to require an employee to adhere to its procedures for claiming overtime"); *Maciel v. City of Los Angeles*, 542 F. Supp. 2d 1082, 1090 (C.D. Cal. 2008) ("This Court, however, does not understand it is an employer's burden to hold each employee's hand and ensure that they take their breaks" to ensure compensation).

### 2.   Plaintiffs all knew about and acknowledged NDOC's exception-based system for reporting overtime

The State of Nevada has a comprehensive regulatory system in place for overtime at NDOC. The overarching principle guiding the use of overtime within NDOC is for Wardens and Facility Managers "to ensure there is sufficient staff on duty to safely operate their institutions and facilities." [SOF ¶¶ 1-5.]

Each Plaintiff is responsible for truthfully reporting the time they work, including all overtime.  Specifically, "an employee shall provide an accurate accounting of the hours worked and leave used during a pay period in the NEATS Timekeeping System ("NEATS"), to include the specific times at which their shift starts and ends and regular days off." Ex. A, A.R. 326.06(1).

NEATS is an exception-based system, which assumes that an employee has worked all hours in their scheduled shift, unless the employee has reported an exception.  [SOF ¶¶ 6-7.]

If there is an exception because of overtime for a non-exempt employee, that employee "must document this time on an Authorization for Leave and Overtime Request form (DOC-1000)." Ex. A-2, A.R. 320.01(2).  Employee exceptions are reported on timesheets, which the employee is required to input and submit into NEATS "at the conclusion of each reporting cycle (pay period) no later than 12 PM, Wednesday, of the non-pay week for each pay period."  Ex. A, A.R. 326.06(4). Employees are subject to discipline under A.R. 339 if they falsify their timesheets.  *See* Ex. A, A.R. 326.06(6).  [SOF ¶¶ 8-10.]

Overtime eligibility depends on whether the employee has opted to work a standard or an innovative workweek, using either a 40-hour or 80-hour variable.  Overtime eligibility also depends on whether the employee has elected to receive compensatory time, or "comp time," in lieu of cash wages for any extra hours worked.  At one time or another, all seven of the named Plaintiffs have worked on a variable (innovative) schedule, and six of the seven named Plaintiffs have agreed to receive comp time instead of overtime.  Plaintiffs have admitted they are not eligible for overtime for claimed work time that falls under one of these exceptions.  [SOF ¶¶ 11-18.]

All of the Plaintiffs have acknowledged on multiple occasions that they received, read, and understood these procedures for reporting overtime.  Their acknowledgments are well-documented in:  new hire checklists; receipts for their employee handbook; acknowledgments that they will "read and familiarize" themselves with all regulations, including those pertaining to overtime and the exceptions-based reporting system; their Employee Work Performance Standards Form, in which they state they are proficient in all applicable rules and procedures; and their acknowledgment to the same effect on each written appraisal they receive from NDOC.  [SOF ¶¶ 19-25.]

### 3.	Plaintiffs admit they received comp time and were paid overtime when they complied with NDOC's exception-based reporting system

Plaintiffs who opted into NDOC's comp time system were given time off when they reported that they worked longer than their scheduled shift.  [SOF ¶¶ 26-29.]

In addition, nearly all of the collective action members took advantage of overtime opportunities.  Payroll data for 563 NDOC employees for the period of 12/31/2007 to 2/15/2016 was analyzed and compared with timekeeping data entered into NEATS.  Of the 555 Correctional Officers in the data, 529 or over 95% recorded some overtime totaling 125,726.9 hours."  According to that analysis, "the average total Overtime hours recorded was 226.5 hours," with the top three officers each reporting more than 2200 hours.  The average total dollars paid in overtime was $7,746.  "Across all [Correction Officer] periods, overtime was recorded on 10,904 of the 51,959 pay periods or 21.0%."  Every NDOC facility paid overtime.  The reasons for the overtime varied considerably between facilities and employees.  [SOF ¶¶ 30-31.]

All seven of the named Plaintiffs were paid overtime, as shown by each Plaintiff's Employee Paycheck Analysis.  All of the opt-in Plaintiffs who were deposed likewise were paid overtime.   In some cases, supervisors put in overtime requests for Plaintiffs, such as when overtime was incurred as a result of responding to a security incident.  For all other time, when Plaintiffs complied with A.R. 320.01(2) by submitting an Authorization for Leave and Overtime Request Form ("Form DOC-1000"), their requests were approved and they were paid for that overtime.  [SOF ¶¶ 32-33, 38-39.]

For example, on May 20, 2014, Plaintiff Echeverria completed a Form DOC-1000 requesting one quarter hour of leave after he apparently worked 15 minutes past his scheduled shift ending at 1:00 p.m.  His request for overtime was approved.  Similarly, "Plaintiff Walden received 15 minutes of Overtime on November 26, 2010 and the timesheet note associated with the entry was 'HOLIDAY WORKED 15 MINUTES OF OVERTIME FOR BEING RELIEVED LATE.'"  Likewise, Plaintiffs Everist, Ridenour, and Tracy were approved for multiple instances of overtime after submitting their Form DOC-1000s.  What is particularly notable about the NEATS data is that over ten percent of the segments recorded by Correctional Officers represented "time at or below an hour in duration," showing that even overtime of short duration was recorded.  [SOF ¶¶ 34-37.]

Jason Hanski explained that NDOC's process for reporting overtime is straight-forward:

Q:  …What's the process to request overtime, as you understand it?

A:  Well, there's what they call DOC-1000, Department of Corrections Form

1000.  That is utilized to file for overtime.

Q:  Okay.  And you're familiar with that process?

A:  Yes.

Q:  …[I]s it fair to say you've used it many, many times in the past?

A:  Well, every time you do overtime you have to have one filled out.

Q:  ….So I don't hear any hesitation that you have in asking for it if you feel you're entitled to it?

A:  ***I'll ask for it if I feel I'm entitled to it, yes***.[22]

Plaintiffs admit receiving overtime in most instances in which they have requested overtime by complying with NDOC's exception-based reporting system, using NEATS and the DOC-1000. [SOF ¶¶ 40-43.]  Plaintiff Donald Riggs testified that he "always got paid for my time.  Sometimes you were offered time off in lieu of being paid … I always got my overtime…. I would file the Doc 1000 and turn it in to my supervisor…. ***I have never seen a form that I turned in rejected***."[23]

### 4.    Plaintiffs admit that they have not followed NDOC policy and have not submitted requests for overtime they claim they have not received

Plaintiffs who allege that they were not paid overtime admitted that it was because they failed to follow A.R. 320.01(2) by completing a Form DOC-1000.  Many have never completed a DOC-1000 or otherwise reported overtime.  What is especially startling is that several Plaintiffs have not reported overtime for even those activities that they admit are routinely paid:  responding to security incidents and working past a scheduled shift time because of late relief.  [SOF ¶¶ 44-47.]

Equally troubling, on the infrequent occasions when Plaintiffs have been denied overtime after submitting a DOC-1000, they have not complied with NDOC's administrative procedures in NAC Chapter 284 for appealing the denial – by either speaking to supervisors in their chain-of-command or by filing a grievance.  That is true even for Plaintiffs like Travis Zufelt, who admitted

---

[22]  Ex. JJ, Hanski Dep., 121:6-16, 122:17-20 (emphasis added).

[23]  Ex. P, Riggs Dep., 31:13-20, 33:5-15 (emphasis added).

that on the one occasion when his overtime request was denied, "after I argued with the supervisor of why I wanted the overtime, then it wasn't…"[24]   [SOF ¶¶ 48-54.]

Plaintiffs offer a wide variety of excuses for not following NDOC's overtime reporting policy.  Some, like Adrian Arias and Francisco Bautista maintain that they do not know the process of reporting their overtime,[25] despite their written acknowledgments of receiving, reading and understanding the procedures for doing so.  [SOF ¶¶ 1-10.]  Other explanations for not completing a DOC-1000, like Donald Walden, Jr.'s, border on the absurd: "I don't believe I did because, I mean, it's not like the NDOC 1000 states that your request is for pre-time.  I mean, it's strictly for overtime…. How can I get overtime before my shift?"[26]  Indeed, Walden contradicted himself when asked why he did not seek overtime for an hour of pre-shift activities he completed when filling in for a supervisor:  "Don't know" why he did not report it, "It's a good question.  I don't know."[27] Other Plaintiffs agreed that they "[d]on't know" why they failed to report their overtime.[28]

One of the most common excuses given by the Plaintiffs for not complying with NDOC's overtime reporting procedures is that it was, in the words of Travis Zufelt, "too much of a hassle."[29] Daniel Tracy "didn't want to hassle" with talking to his supervisor about an overtime request.  Tracy admitted that "…I should have, but … I just wanted to get home.  I ride a motorcycle to work, so I know the ride home is going to be miserable because it was so hot out."[30]  Andre Natali did not bother to report his overtime because "I'm not going to start a federal case over something small."[31]

---

[24]  Ex. FFF, Zufelt Dep., 118:1-119:3.

[25]  Ex. YY, Arias Dep., 63:2-5; Ex. HH, Bautista Dep., 56:21-23.

[26]  Ex. EEE, Walden Dep., 99:16-100:3.

[27]  Ex. EEE, Walden Dep., 71:18-72:3.

[28]  Ex. RR, Tremblay Dep., 28:17-21.

[29]  Ex. FFF, Zufelt Dep., 130:12-18; *see also id.* at 126:3-9.

[30]  Ex. VV, Tracy Dep., 79:4-80:16.

[31]  Ex. FF, Natali Dep., 22:21-22.

1586193v.1

1   Yet, this is precisely what Natali has done.  He has made a federal case out of "something small," to

2   use his own words, all without reporting his time to NDOC as he is required to do.

3      Another excuse Plaintiffs give for not reporting overtime is that they were instructed that

4   time that was *de minimis*, such as periods of less than six minutes, was noncompensable and could

5   not be reported to NDOC.[32]  That would comport with federal law because "[m]ost courts have

6   found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable,"

7   particularly where it is administratively difficult to track the time.  *Lindow v. United States*, 738 F.2d

8   1057, 1062-64 (9th Cir. 1984).  But even Darius Krol admitted this excuse was not true.  He was

9   specifically told that "you can actually write DOC 1000 by the minute."[33]

10      Some Plaintiffs have taken a different tack.  A few contend that when they first started

11   working for NDOC many years earlier, they were told not to request overtime.[34]  Others say that

12   they asked for overtime once, were denied – and did not grieve the issue or elevate it to other

13   supervisors – and then never applied for it again.[35]  One of the Plaintiffs, Terry Day, contradicted

14   this testimony through his own personal knowledge and experience training new recruits.  "***[W]hen***

15   ***they are staying over seven minutes or more after the end of their shift" they are told to submit an***

16   ***overtime request***.  "I also instruct them to hold their shift commanders to task on those things."[36]

17   Another, Jason Hanski, has no personal knowledge of any practice by NDOC to discourage its

18   employees from reporting overtime, admitting, "I haven't spoken directly to individual supervisors

19   so much because it's been a common practice in corrections."  However, ***Hanski does have personal***

20   ***knowledge of one thing:  he has not ever known anyone who requested overtime for pre- and post-***

21   ***shift activities who did not receive it***.[37]

22   [32]  Ex. AAA, Day Dep., 40:9-12; Ex. DDD, Krol Dep., 19:3-11; Ex. SS, Tyning Dep., 25:22-26:8.

23   [33]  Ex. DDD, Krol Dep., 19:3-11.

24   [34]  Ex. KK, Banks Dep., 18:1-19:1; Ex. BBB, Dicus Dep., 86:2-17; Ex. MM, Jones Dep., 32:2-24.

25   [35]  Ex. YY, Arias Dep., 29:20-30:19, 62:7-63:1; Ex. VV, Tracy Dep., 47:17-48:3, 55:5-22; Ex. SS, Tyning Dep., 19:19-
26   20:1, 54:2-15.

27   [36]  Ex. AAA, Day Dep., 57:5-12 (emphasis added).

28   [37]  Ex. JJ, Hanski Dep., 123:18-124:19.

The wide variety of excuses Plaintiffs give for not reporting their overtime refutes any contention NDOC has some sort of "unwritten" policy to not pay them.  The only common policy, plan, or scheme NDOC has is specified in the comprehensive regulatory system and administrative procedures establish by Nevada law, which Plaintiffs have acknowledged that they have received, read, and understand on numerous occasions throughout their employment.  [SOF ¶¶ 19-25.]

### 5.      NDOC is entitled to summary judgment under *Forrester*

The undisputed facts, as stated above, establish that NDOC is entitled to summary judgment on Plaintiffs' claims for overtime under the FLSA.  NDOC's exception-based system for reporting overtime is established under Nevada law, with comprehensive administrative regulations governing how time and attendance including overtime and compensatory time is to be reported.  [SOF ¶¶ 1-18.]  Such an exception-based system complies with the FLSA if it provides an opportunity to report exceptions such as overtime, as NDOC's does.  *See White*, 699 F.3d at 872-73.

On multiple occasions throughout their employment, including in their most recent work performance evaluations, Plaintiffs acknowledged that they received, read and understood all of NDOC's administrative rules and procedures, including the procedure for reporting overtime through NEATS by documenting the claimed overtime through an Overtime Request Form DOC-1000.  [SOF ¶¶ 6-10, 19-25.]  When Plaintiffs followed this procedure, they admit that they were given compensatory time or paid overtime.  [SOF ¶¶ 26-43.]  If their overtime request is denied, for whatever reason, Nevada law provides an administrative procedure for them to grieve their compensation dispute, beginning with their supervisor.  [SOF ¶¶ 48-50.]

The compensation Plaintiffs seek in this litigation is for overtime they admit they did not report to NDOC contrary to its policies and procedures [SOF ¶¶ 44-47.] and outside of the administrative grievance process.  [SOF ¶¶ 51-54.]  If they had reported time that was compensable, NDOC would have paid them.  That is confirmed by the vast volume of overtime requests Plaintiffs did submit which NDOC approved, totaling an average of hundreds of hours of overtime for each Plaintiff.  ***Over ten percent of all overtime NDOC approved was for a duration of one hour or less. Several of the Plaintiffs' files document receipt of overtime for small segments such as just fifteen***

1586193v.1

*minutes.*  [SOF ¶¶ 30-37 (emphasis added).]

These undisputed facts fall squarely under the *Forrester* rule.  "An employer must have an opportunity to comply with the provisions of the FLSA."  646 F.3d at 414.  It is true that an employer cannot "escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation."  *Id.*  But those narrow exceptions to the rule do not apply here.  This is not a case of NDOC negligently maintaining records.  To the contrary, all of the Plaintiffs admitted that they knew how to apply for and receive overtime pay, had done so in the past, and were paid when they complied with NDOC's system.  [SOF ¶¶ 1-43.]

Second, far from turning its back on Plaintiffs' overtime work, Plaintiffs acknowledged that their own actions in not submitting their overtime requests, was responsible for the compensation they are seeking in this litigation.  [SOF ¶¶ 44-54.]  Plaintiffs deliberately violated NDOC policy and failed to report overtime they now claim is owed to them.  They cannot circumvent that requirement by denying NDOC "the right to require an employee to adhere to its procedures for claiming overtime."  *Newton*, 47 F.3d at 749; *see also Thompson v. Pima Cty.*, 2009 U.S. Dist. LEXIS 140470, at **9-11 (D. Ariz. Mar. 30, 2009) (granting employer summary judgment on overtime claim where the employee "deliberately prevent[ed] the employer from acquiring knowledge of the overtime work" by failing to comply with county policy).

Third, the undisputed record evidence is that the nature of Plaintiffs' FLSA theory is highly variable.  Plaintiffs' testimony throughout this case has been that the time it takes to perform an alleged task varies from a few seconds to a few minutes, as Timothy Carlman explained:

> Q: Okay. So is it fair to say the least amount of time that it would take to basically get through operations and to verify what my assignment was for the day and to go out to the post would be three minutes?
>
> A: Well, I can't swear to that too. If I'm not talking to two or three other people, and you just come in and I look at you across the room and you're squared away, I'll go, "Unit 12A," and you can just go.
>
> Q: So it could be a matter of seconds; is that fair?

A: It could be, yes.[38]

Under such circumstances, Plaintiffs never explain how NDOC would have any way of knowing when an employee works overtime without the employee's assistance. ***The "reasonable diligence" that Forrester requires an employer to exercise in its payroll practices "is not an expectation of omniscience."*** *Craig v. Bridges Bros. Trucking, LLC*, 823 F.3d 382, 389 (6th Cir. 2016) (emphasis added). That is precisely why NDOC requires the Plaintiffs to use its comprehensive administrative system to request overtime, which NDOC always paid. *See generally Newton*, 47 F.3d at 749 (an employer has "the right to require an employee to adhere to its procedures for claiming overtime").

In conclusion, NDOC "cannot be said to have suffered or permitted the employee to work in violation of § 207(a)." *Forrester*, 646 F.2d at 414-15; *accord Raczkowski*, 1993 U.S. App. LEXIS 26257 at *3. Accordingly, Plaintiffs have failed to prove their prima facie case, requiring entry of summary judgment for NDOC on all of their FLSA claims. *See Forrester*, 646 F.2d at 414-15; *see also Allen*, 865 F.3d at 944*; Hertz*, 566 F.3d at 781-82; *Newton*, 47 F.3d at 749; *Maciel*, 542 F. Supp. 2d at 1090.

**B.     The undisputed facts show that NDOC has not knowingly and recklessly violated the FLSA's overtime provisions**

Generally, there is a two year statute of limitations for claims under the FLSA. 29 U.S.C. § 255(a). That period can be extended to three years, but only if the claims arise out of a "willful violation." *Id.* This Court cannot presume any conduct is willful in the absence of evidence. *Alvarez*, 339 F.3d at 909. To prove willfulness, Plaintiffs must establish their employer acted in "knowing or … reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citation omitted). Plaintiffs cannot meet their burden.

For the reasons explained already, NDOC's exception-based reporting system complies with the FLSA. On multiple occasions throughout their employment, Plaintiffs admitted they had received, read and understood the requirements for reporting overtime under that system. [SOF ¶¶ 6-

---

[38] Carlman Dep., Ex. O at 88:18-89:5.

10, 19-25.]  When Plaintiffs followed this procedure, they concede they were paid overtime that they earned.  [SOF ¶¶ 26-43.]  The only times that Plaintiffs were not paid overtime that they allege they earned were when they violated NDOC's procedures for reporting it under NDOC's exception-based system [SOF ¶¶ 44-47.] and took no action to raise their compensation issues with their supervisors as required by Nevada's administrative grievance process.  [SOF ¶¶ 51-54.]  In other words, it was the Plaintiffs who acted in "knowing or … reckless disregard" for their overtime reporting requirements under the policies and procedures that govern their employment, not NDOC.

Under these circumstances, in the unlikely event that any of Plaintiffs' FLSA claims survive summary judgment on the various grounds asserted by NDOC in this and its other dispositive motions, as a matter of law Plaintiffs cannot establish NDOC's actions were willful.  *See SEIU Local 102 v. County of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994).  As such, the Act's default two year limitations period applies.  *See* 29 U.S.C. § 255(a).

For the same reasons, Plaintiffs are not entitled to liquidated damages, if any of their FLSA claims remain.  Pursuant to 29 U.S.C. § 260, double-damages under the Act are not to be awarded "despite the failure to pay appropriate wages" where "the employer acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the FLSA."  *Alvarez*, 339 F.3d at 909.  Where, as is the case here, the undisputed facts show the absence of a willful violation, liquidated damages should not be awarded. *See SEIU Local 102*, 60 F.3d at 1356.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**IV.     Conclusion**

2

For all of the foregoing reasons, NDOC respectfully submits that it is entitled to summary

3

judgment on the merits of Plaintiffs' FLSA claims, which should be dismissed with prejudice.  In the

4

alternative, in the unlikely event any of those claims survive summary judgment, Plaintiffs have

5

failed to establish any proven violation was in knowing or reckless disregard of the Act's

6

requirements, precluding use of a three-year limitations period for willful violations and any award

7

of liquidated damages.

8

DATED this 8th day of April, 2020.

9

**WILSON ELSER MOSKOWITZ**

**EDELMAN & DICKER** LLP

10

11

BY:  */s/ James Tucker*

12

James T. Tucker

Nevada Bar. No. (12507)

13

300 South 4th Street - 11th Floor

Las Vegas, NV 89101-6014

14

*Attorneys for Defendants The State of Nevada,*

*ex rel. its Department of Corrections*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP and that on the 8th day of April, 2020, I electronically filed and served a true and correct copy of the foregoing **DEFENDANT STATE OF NEVADA *EX REL*. DEPARTMENT OF CORRECTIONS' MOTION FOR SUMMARY JUDGMENT ON THE MERITS OF PLAINTIFFS' FLSA CLAIMS** to all parties on file with the CM/ECF:

Mark R. Thierman, Esq.
Joshua D. Buck, Esq.
Leah L. Jones, Esq.
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV  89511
Tel:  775-284-1500
Fax:  775-703-5027
*Attorneys for Plaintiffs*

Christian Gabroy, Esq.
Kaine Messer, Esq.
GABROY LAW OFFICES
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, NV  89012
Telephone:  (702) 259-7777
Fax:  (702) 259-7704
*Attorneys for Plaintiffs*

By:  _____ */s/ Lani Maile* _____
An Employee of WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

1586193v.1